# John Funk *vs.* Christian Newcomer & others.

A deed conveyed real and personal estate to certain trustees, and the survivor of them, and the heirs of the survivor, *in trust* to "*sell, convey and dispose of all or any portion*" of said real and personal estate, "*either at public or private sale, for cash or on credit,*" as the trustees might think expedient; and from the proceeds to pay the debts of the grantor, and to hold the *surplus* for the benefit of the grantor during his life, and after his death it was to go as he should direct by will, and in default of a will, to his heirs and representatives: Held,

1st. That under this deed, the trustee *had power* to sell and convey the whole real estate to other parties, in consideration of their assuming to pay the debts of the grantor specified therein, and such *conveyance* is, in the absence of fraud, valid as between the grantees and the heirs at law of the grantor in the original deed of trust.

2nd. That the circumstances, that the grantor in the original deed, urged the execution of the subsequent conveyance, and recognized the title of the grantees therein, by frequently stating to purchasers from them of portions of the land, and to those who applied to him to make such purchases, that he was only a tenant at sufferance, that he had only a life estate in the property, that the fee was in the grantees, and that he was glad he was free from difficulty, because the grantees had agreed to pay his debts for the property conveyed to them, amount to an *estoppel in pais* and *binding on his heirs.*

A grantor is *estopped* from denying a title recognized in a deed under which he claims: a grantor is estopped from denying the title of his grantee; and a title acquired by the grantor after he has conveyed, by warranty, land to which he had no title, enures to the grantee by estoppel.

Funk *vs.* Newcomer, *et al.*

Where a person having title to real estate, *acquiesces* in the sale of it by a person pretending to have title and having color of title, he is bound by such sale, provided no fraud was practiced.

One of two grantees who has accepted the deed by acting under it, in executing conveyances for parts of the land, is *estopped* from denying the title of his co-tenant in common, and cannot claim the whole by a title paramount that under which his co-tenant claims.

APPEAL from the equity side of the Circuit Court for Washington county.

Andrew Newcomer, on the 15th of November 1822, exe. cuted a *deed of trust* to Henry Newcomer, Henry Landis and John Witmer, in which he recites an indebtedness to each of the grantees, and to others, some of whom are particularly named, with the amounts due them, and then conveys property, consisting of an undivided three-fourths of two tracts of land, and all his personal property on his farm and in his dwelling house, to the grantees, "and their heirs, and the survivor of them, and the heirs of such survivor forever," *in trust* that they "and the survivor or survivors of them, and the heirs of such survivor, *may sell, convey and dispose of all or any portion of the real estate,* together with the *personal property,* as in this deed of trust set out and described, *either at public or private sale, for cash or on credit, as they* the said" trustees "*may judge most advantageous and expedient,* and the proceeds of the said sales to apply, *first,*" to the payment of all the debts owing to the persons *specified and mentioned* in the deed, with interest, costs, &c., and *then* to the payment of all the just and *bona fide* debts of the grantor, with power to contest any that may seem to the trustees unjust; and *further,* to retain such sums as may be necessary to pay all costs, counsel fees and other charges which may arise and accrue during the execution of the trust; "and *lastly,* to hold the surplus (after fulfilling and satisfying the aforesaid trusts,) *whether the same shall consist of real or personal estate, bonds or money,* in trust to permit him, the said Andrew Newcomer, to hold, enjoy and possess the real and personal estate, and receive the interest of the money, if any there be, or have the same laid out or invested" for his benefit, "for and during the

term of his natural life, and at and upon" his decease, "then the surplus of all the estate and property hereby conveyed, whether the same be real, personal or mixed, to be conveyed, paid and applied, according to the "directions of his will," and in default of any such last will or testament, then to be conveyed, paid and applied, to the use, benefit and advantage of the heirs and representatives of him the said Andrew Newcomer, according to law."

On the 29th of April 1825, Henry Newcomer and John Witmer, the two surviving trustees, executed a deed to John Funk, and Christian Newcomer, Jr., reciting the deed of trust of 1822, and that "whereas, the said Henry Newcomer and John Witmer, by virtue of the said deed of trust, and *in execution thereof,* have *sold and disposed* of to the said John Funk, and Christian Newcomer, Jr., all the lands which were conveyed to Henry Newcomer, Henry Landis and John Witmer, by Andrew Newcomer, in the deed of trust above mentioned, in fee-simple:   And whereas, the said John Funk, and Christian Newcomer, Jr., *have taken upon themselves the payment of the debts which are specified in the deed of trust above mentioned, and have already paid part of the said claims:* Now this indenture witnesseth, that the said Henry Newcomer and John Witmer, in consideration of these presents, *and in execution of the trusts confided to them* as aforesaid, and for the purpose of transferring the legal estate in the lands and premises hereby conveyed," do "grant, bargain and sell unto the said John Funk, and Christian Newcomer, Jr., *their heirs and assigns,*" all the real estate conveyed by the deed of trust of 1822, to have and to hold the same "unto the said John Funk, and Christian Newcomer, Jr., *their heirs and assigns forever.*"

In September 1847, Andrew Newcomer died, leaving a widow, and Christian Newcomer, Jr., and the wife of John Funk, his only children and heirs at law.   He also left a will, by which he devised to his son Christian, in fee, fifty acres of his farm on which he resided, including all his houses, barns and other buildings, to be laid off in a particular manner, and all his mountain land, about fifty-six acres; the balance of his farm, about ninety acres, he valued at $50 per acre, and ex-

pressed the wish that his son Christian should take it, at that price, and apply the proceeds, first, to pay all his lawful debts, and the balance to retain during the life of his widow and for her support, and one year after her death, to divide whatever remained, equally between his son Christian and his daughter Catharine Funk.  His personal effects, save such articles as his widow  had the liberty of selecting for her own use, were directed to be sold by his executors, Christian Newcomer and John Funk, and the proceeds equally divided between his two children.

The *bill* in this case was filed on the 28th of February 1852, by John  Funk against Christian Newcomer and  wife, Elizabeth Newcomer the widow of the deceased, and Catharine Funk the wife of the complainant, praying for a *partition* of the land embraced in the deed of 1825, in proportion to the amount of the debts, of Andrew Newcomer, paid by each of the grantees therein, and for an account of the debts so paid by each, and for general relief.  The allegations of the bill, and the defences set up by the answers, sufficiently appear in the opinion of this court and the argument of counsel.

A large mass of testimony was taken in the case, the substance of which only need be stated.  On the part of the *complainant* many witnesses were examined who concurred in proving the *declarations* of Andrew Newcomer, made at different times and places, and extending over the entire period between the date of the deed of 1825 and his death, to the effect that the trustees had *sold* the land to Funk and Christian Newcomer, and that they *owned* the land; that he (Andrew Newcomer) held the land by their sufferance; that the fee was in them; that he had only a life interest in the land; that he had no interest in the land except as a tenant at sufferance, or during the pleasure of Funk and Christian Newcomer, and others to the like effect.  These declarations were made, in some instances, to *purchasers* from Funk and Christian Newcomer of portions of the land, and to those who applied to him to make such purchases.  It was also proved, that he frequently *declared,* that Funk and his son Christian were to pay *all his debts,* in consideration of which they were to have

his farm, and that he rejoiced that he was thus freed from difficulty. It was further proved, that Andrew Newcomer, urged the execution of the deed of 1825.

In order to show that the title of Funk under the deed of 1825, had been frequently and in many ways, both before and since the death of Andrew Newcomer, *recognised and acknowledged by Christian Newcomer*, it was proved that he, the said Christian, had frequently said that he and Funk held the farm between them; that he required Funk to pay one half as a proportionate part for the expenses for repairs made on the farm; that he paid but a part of the taxes on the land, and required Funk to pay a part thereof; and that he united with Funk in conveying portions of the land to various purchasers as shown by the several deeds therefor.

It was also proved, that Funk applied large sums of money in payment of the debts of said Andrew Newcomer, and that Christian Newcomer was in straitened circumstances, it being as much as he could do to provide for the support of his own family, which was a large one, and he has never been able to make money, and has never had any money whatever to pay any part of the debts of his father.

On the part of the *defendants*, John Witmer, one of the *trustees* in the deed of 1822, and grantor in that of 1825, testified in substance, that the deed of 1825 was not for the purpose of a *bona fide* sale to Funk and Christian Newcomer, of the land mentioned in it, but merely to convey to them the trust; that the trustees, in the deed of 1822, did not care about having the trouble of the business and were willing to convey their trust, and the understanding between them and said Funk and Christian, was, that the latter were to go on and discharge the duties in the same manner that the trustees were to have discharged them under the deed of 1822; that this was talked over among the parties; that it was also mentioned at the time of the execution of the deed of 1825, that Andrew Newcomer was to have the power of disposing of the land as it was reserved to him under the deed of 1822, by will, as he pleased; that witness does not remember reading or hearing read the deed of 1825, before its execution, but he

39    v.10

went to Hagerstown by invitation, with the other trustees, and signed the paper which was prepared for them, which he understood to be an assignment of the trust.

It was further proved by this witness and many others, that Andrew Newcomer remained in possession of the land from the date of the deed of 1822 up to the time of his death, exercising acts of ownership over it just as he had done before; that the contracts for the sale of part of the land to the parties mentioned in the answers, were made with Andrew Newcomer himself, that Funk was never present on any occasion of these contracts nor had he any thing to say in them; that these sales were made without the presence or agency of either his son Christian or Funk; that Andrew Newcomer, repeatedly declared during his possession, and accompanying his acts, that the land was his, and he would rule in his own house. There is also proof, that both Funk and Christian, during most of the time, and up to Andrew's death, rented portions of the land, and paid shares to Andrew; that the avails of the sales went to the payment of Andrew's debts, with admissions to some of the witnesses of this fact by Funk. There is also, full proof of the high value of this estate in 1825, showing a great difference between the debts specified in the trust and the real value of the land; also, that Funk at that time had little or nothing in the way of pecuniary means to defray these debts; also, that Christian Newcomer's mind was of a low order, and inadequate to the transaction of such business, and dependent upon the lead and direction of others; and that the business of selling the lands and realising the money was conducted chiefly by Andrew himself.

The defendants filed *exceptions* to the testimony taken on the part of the complainants, showing the *declarations* and *conversations* of Andrew Newcomer, in regard to his title to the land, as incompetent for any purpose sought by the complainant. The complainant, also, filed *exceptions* to the *admissibility* of the testimony of John Witmer, and to the declarations of Andrew Newcomer, as testified to by the other witnesses on the part of the defendants.

The court below, (PERRY, J.,) passed a decree dismissing the bill with costs, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*John M. S. Causin* and *Richard H. Alvey* for the appellant, argued:

1st. That irrespective of the consent or acquiescence of Andrew Newcomer, the power conferred on the trustees by the original deed of 1822, was ample to authorise them to dispose of the land in the manner and for the consideration they did by the deed of 1825, which conveyed to Funk and Christian Newcomer the title, both legal and equitable, in the land therein described. *5 Johns. Ch. Rep.*, 441, *Minuse vs. Cox.* Deeds of trust, like all other deeds, are to be construed by the objects, motives and intentions of the parties, to be gathered from the *language of the deeds themselves.* 10 *Law Lib.*, 124, *Willis on Trustees.* There can be no doubt that the deed of 1825 is, upon *its face*, an *absolute deed* of bargain and sale, conveying to the grantees the *fee-simple* estate in the land described in it. The question then is, had the trustees *power* under the deed of 1822 to execute the deed of 1825? We say they clearly had such power. The deed of 1822 gives power to the trustees to "*sell, convey or dispose of*, *all or any portion* of the real estate, either at public or *private sale*, for cash or *on credit*," as the trustees may think proper, and from the *proceeds* to *pay*, or *secure* to be paid, *the debts* of Andrew Newcomer. It, therefore, *contemplates* just such a disposition of the property as was made by the deed of 1825. *Hill on Trustees*, 231. The *payment* and the *securing* of the debts was the *consideration* for the deed of 1825. The trustees under the deed of 1822 had no *power* to *assign the trust;* the word *assigns* is not used in it; the conveyance is to the trustees "*and their heirs, and the survivor of them, and the heirs of such survivor.*" By *devolving* the trust to others, they would have been guilty of a *breach of duty;* their power was simply to *sell*, and the deed of 1825 purports to be made

"by *virtue* of the said deed of trust and *in execution* thereof."
The *presumption* is, that the trustees *have done their duty.*
10 *Law Lib.*, 124, 127, *Willis on Trustees.* The grantees
in the deed of 1825 are trustees as to *creditors,* but not as to
Andrew Newcomer, and no *resulting trust* in his favor will
be implied. *Hill on Trustees,* 144, note 1. And so far as
creditors are concerned the presumption is, from lapse of time,
that the debts have been *paid,* and that the grantees did their
duty in this respect. 5 *G. & J.,* 314, *Clagett vs. Salmon.* 7
*G. & J.,* 13, *Hagthorp vs. Neale.* 2 *Do.,* 114, *Shilknecht vs.
Eastburn.* 9 *Do.,* 81, *Clagett vs. Hall.* 1 *Gill,* 428, *Gard-
ner vs. Simmes.* 2 *Md. Rep.,* 427, *Lark vs. Linstead.* 4
*Term Rep.,* 682, *England vs. Slade.*

2nd. That the declarations and acts of Andrew Newcomer,
the original grantor, are admissible in evidence to prove that
the deed of 1825 was made with his consent, or that it was
subsequently ratified by him. And if admissible for the pur-
pose, they prove clearly, that from the execution of the deed
to the time of his death, he acknowledged the validity of that
deed and the title of the grantees derived thereunder. This
evidence was not offered for the purpose of establishing a trust
contrary to or inconsistent with that expressed on the face of
the deed, but was intended to support the legal effect of the
deed, by rebutting any equity which might be otherwise
implied from the fact of notice of the trusts in the original
deed of 1822. It is a rule in equity, that a party taking with
notice of a trust charges himself with its execution. It is also
a rule, that a trustee shall not purchase property which he
professes to sell in execution of his trust. These rules have
been established for the protection of the party interested in
the execution of the trust, and he has the exclusive right to
enforce their observance. It is the settled law of this court
that he may lose this right by delay simply, and, *a fortiori,*
by any acts which indicate his approbation of, or acquiescence
in the violation of the rule. And in this case Andrew New-
comer not only consented to, and acquiesced in, the making
of the deed of 1825, but, as it would seem, actually instigated
and procured the making of it by the *surviving trustees.*

And Christian Newcomer, the defendant *claiming under* Andrew Newcomer *as devisee,* is *bound and concluded* by his conduct and declarations in reference to the validity of the deed of 1825, and the rights acquired under it.    In support of these propositions, we refer to the following authorities: 1 *Greenlf. on Ev.*, secs. 147, 148, 149, 189.    5 *Md. Rep.*, 541, *Tyson vs. Shueey.    4 Md. Rep.*, 135, *Mason vs. Martin.* 1 *Md. Ch. Dec.*, 44, *Gibbs vs. Cunningham.    Ibid.*, 331, *Harrison vs. Harrison.    5 Barr.*, 97, *Hillegass vs. Hillegass.* 11 *Ala.*, 514, *Gary vs. Colgin.    1 Pet.*, 146, *Greenleaf vs. Queen.    3 Edw., Ch. Rep.*, 175, *Schenck vs. Ellingwood. Hill on Trustees*, 525, 526, 527.    3 *Swans.*, 64, *Walker vs. Symonds.    11 Ves.*, 326, *Brice vs. Stokes.    Ibid.*, 333, *Sanford vs. Gascoyne.    10 Do.*, 426, *Randall vs. Errington.* 5 *Simons*, 555, *Nail vs. Punter.    2 Atk.*, 25, *Walmesley vs. Booth.    3 Do.*, 440, *Trafford vs. Boehm.    4 G. & J.*, 379, *Williams vs. Marshall.    1 H. & J.*, 73, *Russell vs. Baker.* 3 *Do.*, 410, *Dorsey vs. Dorsey.    4 Do.*, 243, *Walls vs. Helmsley.    4 Taunt.*, 16, *Uncle vs. Watson.    2 Pick.*, 536, *Cambridge vs. Lexington.    5 Barn. & Ald.*, 223, *Doe vs. Pettett.    1 Bing. N. C.*, 430, *Carne vs. Nicoll.    3 Phillips on Ev.*, 219, 220.

3rd.  That Christian Newcomer being a grantee in the deed of 1825, cannot controvert the title created by that deed, under pretext of any right or title subsequently acquired by him as heir at law or devisee of Andrew Newcomer.   There is no proof of such mental insufficiency as will entitle him at this time to avoid his own solemn act, and, moreover, his *declarations* and *acts* clearly establish his *deliberate acceptance* of the deed, and he is thereby *estopped* from denying its validity.    6 *H. & J.*, 443, 444, *Watkins vs. Stockett.    13 Ves.*, 87, 88, *White vs. Wilson.    7 Gill*, 10, *Brooke vs. Townshend.    4 Md. Rep.*, 498, *Marshall vs. Haney.    1 Do.*, 541, 542, *White vs. Flannigain.    13 Mees. & Wels.*, 309, *Lyon vs. Reed.    Coke Litt.*, 352, *(a.)*

4th.  That the testimony of John Witmer, one of the *grantors* in the deed of 1825, is inadmissible in so far as it affects to show that the intent or object of the deed is different from

that expressed on its face. He is an incompetent witness to establish such facts, and his evidence is offered to *contradict* the deed. And that the acts of Andrew and Christian Newcomer, offered in evidence by the defendant, are inadmissible as evidence to invalidate the title of the complainant acquired under the deed of 1825, and all such testimony of the defendant as tends to contradict, vary, or add to this deed. No evidence will ever be admitted for the purpose of engrafting a *parol trust* upon an instrument which purports to be an *absolute gift or sale.* This deed can only be assailed by a bill to impeach the sale: by proceedings instituted directly for that purpose. In support of these views, we refer to 2 *H. & J.,* 402, *Dorsey vs. Gassaway.* 5 *Do.,* 372, *Jones vs. Shubey.* 6 *Do.,* 24, *Wesley vs. Thomas. Ibid.,* 276, *Hurns vs. Soper. Ibid.,* 435, *Watkins vs. Stockett.* 1 *H. & G.,* 11, *Ringgold vs. Ringold.* 2 *Md. Rep.,* 25, *McElderry vs. Shipley.* 1 *Johns. Ch. Rep.,* 282, *Parkhurst vs. Van Cortland. Ibid.,* 339, *Movan vs. Hays.* 1 *Desau.,* 333, *Lloyd vs. Inglis. Hill on Trustees,* 61. 1 *Brown's Ch. Rep.,* 92, *Irnhan vs. Child.* 4 *Russ.,* 423, *Leman vs. Whitley.* 4 *Md. Rep.,* 119, *Marshall vs. Haney.* 1 *Do.,* 541, *White vs. Flannigain.* 11 *Ala.,* 519, *Gary vs. Colgin.* 10 *Law Lib.,* 85.

5th. The answer of Christian Newcomer avers, that the original deed of trust was executed with intent to delay and hinder the creditors of the grantor, and that the deed of 1825 was made in furtherance of such unlawful intent. There is no proof offered in support of these averments, and, in the absence of proof, the defendant cannot claim in opposition to the case made by his answer; and upon the case so attempted to be made he *has no equity,* and cannot gainsay the title of the complainant as expressed on the face of the deed. Again, it is said the *consideration* was *inadequate.* If it is possible to show this in such a case as the present our reply is, that there is evidence to show a *superadded* consideration by the payment of other debts than those specified in the deed. 9 *G. & J.,* 81, *Clagett vs. Hall.* Limitations are also relied upon, but cannot avail, as *any recognition* of the complainant's title during the possession is sufficient to stop the running of the

statute. 6 *Md. Rep.*, 202, *Stump vs. Henry.* 4 *Kent's Com.*, 370. 2 *Salk.*, 423, *Reading vs. Royston.* 5 *Burr.*, 2604, *Empson vs. Shackleton.* 1 *East*, 575, *Peaceable vs. Read, et al.*

6th. That upon the case made by the bill, if proved, the complainant is entitled to a decree for an account as prayed, and a declaration that the excess of his payments above those made by Christian Newcomer, is a charge upon the latter's undivided interest in the land purchased and conveyed by the deed of 1825, and that subject to such charge a partition of the whole land be made amongst the parties according to their respective interests. Or if a partition cannot conveniently be made, then it will be competent for the court, under the general prayer, to direct a sale of the entire land with a view to the distribution of the proceeds according to the equities of the parties. There is no exception taken to the sufficiency of the averments of the bill, and that the court has power to grant the relief asked in this case, and certainly to have directed an account, see 10 *G. & J.*, 253, *Pierce vs. Tiernan.* 11 *Do.*, 98, *Warfield vs. Banks.* 6 *Do.*, 152, *Bentley vs. Cowman.* 12 *Do.*, 271, *Glenn vs. Hebb.* 1 *Bland*, 236, *Lingan vs. Henderson.* *Ibid.*, 233, *note.* 2 *Do.*, 45, *Townshend vs. Duncan.* *Hill on Trustees*, 93. And that the proper parties were before the court, see *Story's Eq. Pl.*, secs. 77, 229. 1 *Johns. Ch. Rep.*, 349, 350, *Wendell vs. Van Rensselaer.* 1 *Md. Rep.*, 377, *Young vs. Frost.* 17 *Ves.*, 533, 544, 552, *Agar vs. Fairfax.*

*J. Dixon Roman* and *Daniel Wiesel*, for the appellee argued:

1st. That supposing the bill presents a case for relief, the prayer for a partition cannot be granted, inasmuch as the bill alleges a tenancy in common of *all the lands in the deed of 1825*, while the proof shows that large portions of those lands had been sold, and the purchasers are not parties to the bill except the complainant himself, and he cannot seek a partition of his own separate property or that of the other vendees.

2nd. Andrew Newcomer was a *cestui que trust*, under the

deed of trust of 1822, and had a valuable beneficial interest under that deed which he could devise; and that this interest he could not part with by *parol,* or by acts of *acquiescence,* or by *declarations* however strong. He could only part with it by a contract *in writing,* signed by him, and certain in its terms. *5 Md. Rep.,* 66, *Albert & wife vs. Winn & Ross. Statute of Frauds, sec.* 4. *Hill on Trustees,* 126. *2 Gill,* 164, *Bell vs. Mong.* 12 *Ves.,* 67, *Randall vs. Morgan.*

3rd. That trustees in all cases must pursue their duties and powers strictly. In this deed of 1822, they were simple and well defined. Andrew Newcomer could not dispose of his *equitable fee-simple.* His life estate in trust he could have parted with by a proper conveyance, but the remainder in fee he could not. The trustees would still hold it subject to the trusts and powers in their deed. By the execution of the deed of.1825, they violated the trust in every particular. They could not *delegate* their trust; they *were required to pay* the purchase money to the creditors, and yet this authority is attempted to be delegated to others by the deed of 1825. *Acquiescence* under the circumstances of this case will not cure this *violation of the trust.* All the cases cited on the other side, were cases of trust of *personal property. Acquiescence* can never divest a party of his title to *real estate.* Andrew Newcomer and his heirs at law had *vested rights,* under the deed of 1822, and there never has been a case in which a party by *verbal declarations* and *acquiescence* could divest himself of such an interest. But there was in fact no *acquiescence;* he held the land, sold part of it, and received the purchase money for it. Exacted the rent for it, paid the taxes on it, and devised it by his will. We do not claim under the deed of 1825; we stand in the place of Andrew Newcomer, and claim the *reserved right* under the original deed of 1822. The grantees in the deed of 1825, took as trustees with full notice of the trusts, and equity will so regard them upon the *strength of the deeds themselves,* without resort to any extrinsic evidence to construe that deed, and under this deed, Andrew Newcomer and his devisees are important beneficiaries. The recitals in this deed show full notice of the trust, and it was not executed for a full

and fair consideration. A trustee cannot buy from his *cestui que trust* except upon a clear and fair contract. In support of our views upon this point we refer to 8 *Wheat.*, 421, *Wormley vs. Wormley.* 4 *Gill*, 405, *Dolan & Foy vs. Mayor & C. C. of Balto.* *Hill on Trustees*, 144, 158, 159, 163, 164, 165, 172, 478. *White & Tudor's Lead. Eq. Cases*, 32. 5 *Md. Rep.*, 18, *Stoddert vs. Bowie.* 3 *Yerg*, 383, *Wade vs. Harper.* 3 *Desau.*, 25, *Mathews vs. Dragaud.* 2 *Gill*, 164, *Bell vs. Mong.* 2 *Md. Rep.*, 170, *Albert & wife vs. Savings Bank.* 10 *G. & J.*, 324, *Hardy vs. Summers.* 1 *Sim. & Stu.*, 555, *Nailor vs. Winch.* 9 *Ves.*, 245, *Coles vs. Trecothick.* 12 *Do.*, 356, *Morse vs. Royal.* 1 *H. & G.*, 70, *Ringgold vs. Ringgold.*

4th. The parties, themselves, did not treat the deed of 1825 as an *absolute sale.* Funk and Christian Newcomer, stood by and saw the deed to Muck in 1831, for part of this land, executed by Andrew Newcomer alone, containing a general warranty of title, and a covenant for further assurance, and saw the purchaser pay the purchase money to Andrew. This is an overwhelming fact to show what the ideas and intentions of the parties were. Again, the deed to *Funk himself*, in 1827, is another fact showing the same thing. He accepts this deed from Andrew Newcomer, and thereby *admits* the latter's *title* to the land, and is *estopped* from denying it. Again, if it was an absolute sale, why pay the debts which by the deed they were not bound to pay? and why pay rent to Andrew Newcomer for the land? In view of these facts, independent of the direct testimony of Witmer on the point, we must regard the deed of 1825, not as an absolute sale, but as a mere family arrangement, by which the grantees in that deed were to be substituted in the place of the *original trustees.* It is in fact a deed of trust. A creditor could bring the grantees into equity and charge them as trustees, and so could Andrew Newcomer, in his capacity as *cestui que trust.* All his declarations offered in evidence on the other side, if admissible, are not inconsistent with his rights under the deed of 1822, and if the deed of 1825, be charged with these trusts, then all he said is strictly true, and his various acts show that he was in

40     v.10

possession of his own property, reserved under the deeds of trust for his benefit.

5th. That the uninterrupted possession by Andrew Newcomer for more than twenty years, claiming title, and exercising acts of ownership over the land, is a complete bar to the pretensions of the appellant.

6th. That the complainant is not entitled to an account under the prayers of the bill. An account under the prayer for general relief would not agree with, but would differ from, the case made by the bill. 6 *H. & J.*, 29, *Chalmers vs. Chambers.* If the parties took, subject to the trusts and rights of Andrew Newcomer, an account would be nugatory so far as the land is concerned, and by the bill it is asked only for the purpose of ascertaining how the *partition* should be effected. The bill does not proceed upon the ground that the complainant is a creditor of Andrew Newcomer, or is substituted to the rights of creditors for payments made to them, but that the parties are purchasers and tenants in common of the land. 2 *Sug. Vend.*, 931. *Hill on Trustees*, 92, *note* 1.

Le Grand, C. J., delivered the opinion of this court.

The bill of the appellant was filed in this cause for the purpose of obtaining a partition of certain property, alleged to be held in common with the appellee, and, also, for an account of profits, expenditures, &c.

The case, as made by the bill, may be thus stated:—A certain Andrew Newcomer, of Washington county, being indebted to various persons in the year 1822, made a deed of trust of his property to certain parties, which provided for the payment of his debts, and reserving to the grantor any residue which might remain, for life, and then to go in such direction as he might indicate by his last will, and in default of his making a will disposing of it, then to his heirs. The trustees under this deed, after executing the trust in part, sold the property to the appellant and appellee, they taking upon themselves the payment of the debts. The appellant claims that the trustees, under the deed of 1822, had the right and power, under its provisions, to make such a disposition of the property

mentioned in it as they did by the deed of 1825. He claims to have advanced most of the money for the payment of the debts. The wife of the appellant, and the appellee, are the only heirs at law of Andrew Newcomer.

In opposition to the pretensions of the appellant, the appellee insists, it was never the design, by the deed of 1825, to convey an absolute title to the grantees in it, but merely to continue the trust created by the deed of 1822, and that when the debts of Andrew Newcomer should be paid and discharged, whatever might remain should belong to him.

The decision of the case must depend upon the language of the instruments themselves. The deed of 1825 is an absolute deed of bargain and sale to the appellant and appellee, *"their heirs and assigns."* So far as the face of the deed is concerned there can be no doubt of its true character; the real question involved in the case arises out of the deed of 1822, and that is, did it confer on the trustees named in it the power to convey, as they did, by the deed of 1825? This must be answered by the language of the deed. The parts of it which are material to the present inquiry may be thus given: after specifying certain debts due and owing by Andrew Newcomer, it conveys the property to the trustees, they "to hold, all and singular, the real estate above described, with its appurtenances, together with all the personal estate or property, as likewise above set forth, to them, the said Henry Newcomer, Henry Landis and John Witmer, and their heirs, and the survivor of them, and the heirs of such survivor, forever, in trust, nevertheless, *that they, the said Henry Newcomer, Henry Landis and John Witmer, and the survivor or survivors of them, and the heirs of such survivor, may sell, convey and dispose of, all or any part or portion of the real estate, together with the personal property as in this deed of trust set out and described, either at public or private sale for cash or on credit, as they, the said Henry Newcomer, Henry Landis and John Witmer, may judge most advantageous and expedient,* and the proceeds of the sales to apply, first, to the discharge of all the several debts and sums of money due and owing by him, the said Andrew Newcomer," &c.

This deed certainly authorises the sale, by the trustees, *"of all or any part or portion of the real estate, together with the personal property."* And this being so, there can be no doubt the deed of 1825 was but a proper exercise of the power conferred by that of 1822, unless it was executed with a fraudulent design, or was the result of a fraud practiced by both, or one, of the grantees in it, on the grantors and on Andrew Newcomer. The deed of 1822 authorised a sale of "all or any part" of the property, and on such terms as the trustees deemed the most advantageous, "either for cash or on credit."

It must be recollected that the rights of none of the creditors of Andrew Newcomer are involved in this controversy. If he had any, at the time of the filing of the bill in this case, the deed of 1822, as to them, would be void under the decisions of this court. The controversy here is between the heir at law of Andrew Newcomer and John Funk, both being grantees in the deed of 1825. We are of opinion, that Christian Newcomer is *estopped* from denying the title conveyed by the deed of 1825. In support of this opinion it is but necessary to state a few principles familiar to the profession. A party is estopped from denying a title which is recognized in a deed under which he claims; a grantor is estopped from denying the title of his grantee; a title acquired by the grantor, after he has conveyed, by warranty, land to which he had no title, enures to the grantee by estoppel. These principles dispose of the testimony of John Witmer, one of the grantors in the deed of 1825, and of the objection of Christian Newcomer. But, it is said, and witnesses were examined to show, that the property conveyed was in value considerably beyond the debts of Andrew Newcomer, and that, therefore, to allow the grantees in the deed to take it on the payment of the debts would be to work a fraud on Andrew Newcomer. To this it is replied, and by an abundance of testimony, given by many witnesses, that Andrew Newcomer recognized the title of Funk and his son Christian after the deed of 1825, stating to purchasers from them of some of the property that he was only a tenant at sufferance; that he had only a life estate in the property; that Funk and his son had the fee in them.

This he stated to persons who applied to him to make purchase of some of the property. He congratulated himself on the fact that he was free from difficulty, because Funk and his son Christian had, for the property conveyed to them, agreed to pay his debts. Besides, it is proved, that Andrew Newcomer urged the making of the deed of 1825 to Funk and Christian Newcomer. These circumstances we consider as amounting to an estoppel *in pais* and binding on his heirs. Where a person having a title to real estate, acquiesces in the sale of it by a person pretending to have title, and having color of title, he shall be bound by such sale, provided no fraud was practiced upon him. *Morris vs. Moore,* 11 *Humphreys,* 433. "If a person maintain silence, when in conscience he ought to speak, equity will debar him from speaking when conscience requires him to be silent." *Hall vs. Fisher,* 9 *Barbour,* 17. In the case of *Morford vs. Bliss,* 12 *B. Monroe,* 255, it was held, that where a mortgagee of certain premises requested the holder of a note of the mortgagor, in which the mortgagee was surety, to obtain judgment on the note, and levy on and sell the mortgaged premises, he being present at the sale, and did not object to the sale, that he was estopped to assert his title, under the mortgage, to the premises.

Christian Newcomer having accepted the deed of 1825, (as we must suppose, as he has acted under it in executing deeds for parts of the land,) and, by its legal effect, acknowledged the interest of Funk, as tenant in common, cannot now claim the whole land by a title paramount to that under which John Funk claims. The doctrine of estoppel applies to such a case, as fully as if he had, himself, sold the land to Funk, and was now seeking to divest the title he had conveyed. If Funk, on the faith of this deed, has paid Andrew Newcomer's debts, it would be a fraud to allow Christian Newcomer to take the land by the title under which he now claims.

In reply to the objection urged at the bar, that Funk had purchased, after the deed of 1825, a portion of the property mentioned in it, it may be stated that this circumstance, in no way, impairs the title of Funk under the deed of 1825. He merely purchased out the interest of Christian Newcomer in

the particular property, and also the interest of Andrew New-
comer in the one-fourth of it, derived through Christian New-
comer, senior.　Had the sale been made to a third party, the
transaction would be seen to be free from all difficulty.　So
far as Christian Newcomer was concerned, the deed to Funk
was but a severance of the tenancy in common.

In thus disposing of this case it may not be improper to
observe, that there are some circumstances connected with it
which are very well calculated to induce the opinion, that the
deed of 1825 was intended as a mere continuance of the trust
created by that of 1822, and as the result of a family arrange-
ment.　But, inasmuch as the parol proof is excepted to and
ruled out, and the parties having chosen to indicate their rela-
tions to each other by instruments of the greatest dignity and
solemnity, and to do acts in conformity with their legal pur-
port, they must abide the legal consequences flowing therefrom.
At least a majority of the court so think.

Entertaining these views, we are of opinion the appellant is
entitled to the relief asked, and, accordingly, reverse the decree
and remand the cause for further proceedings, in accordance
with this opinion.

*Decree reversed and cause remanded.*