# GEORGE R. CARR et al. *vs.* CHARLES C. McCOLGAN.

*Filling in Blanks in Mortgage After Execution by Parol Authority of Mortgagor—Ratification and Estoppel.*

It was agreed between the owner of a farm, who sought to borrow money on it, and the lender that a certain sum would be loaned to be secured by a mortgage to be drawn by the lender's attorney, after an examination of the title. On the day appointed for the execution of the papers the mortgagor and his wife came to the office of the attorney but the mortgage was then only partly written out—about one-half of the description of the land, which the attorney had found it necessary to make anew, being incomplete. Since the mortgagors desired to leave the city on that day, it was agreed between them and the attorney that they should then sign the mortgage notes and execute and acknowledge the unfinished mortgage, and that the attorney should afterwards finish the description and deliver and have recorded the mortgage. This was done accordingly. The mortgagor received the amount of the loan,

less a certain sum paid by the mortgagee for overdue taxes, judgments and the redemption of a ground rent, in pursuance of the agreement of the parties. A few days afterwards a confirmatory mortgage was executed to cure a supposed defect in the description, and in express terms it confirmed the mortgage. This confirmatory mortgage was mislaid and not put on record, but was offered in evidence at the trial of this cause. The mortgagor paid the first installment of interest and asked for, and obtained, an extension of time in paying a subsequent installment. Other defaults having occurred, the mortgagee offered the farm for sale under the mortgage. The mortgagor was present at the sale and made suggestions, which were adopted, as to the best manner of offering the property. Afterwards he filed the exception in this case to the ratification of the sale so made, alleging that the mortgage had not been validly executed. *Held*, that, wholly apart from the question whether the parol authority given to the attorney to fill in the blanks in the mortgage after its execution and before its delivery was not in itself sufficient to make the mortgage so executed valid, the conduct of the mortgagor as above stated amounts to a ratification of the mortgage and estops him to deny its validity.

Appeal from the Circuit Court for Carroll County (THOMAS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, SCHMUCKER and JONES, JJ.

*Rufus W. Applegarth* and *E. Oliver Grimes, Jr.*, (with whom were *Emanuel W. Herman* and *Chas. T. Reifsnider, Jr.*, on the brief), for the appellants.

A blank form of mortgage signed, sealed and acknowledged and afterwards filled up in the signer's absence, by another person without *written authority*, under seal, so as to make it a mortgage on land owned by the person signing the paper, is not a deed in writing valid to pass an estate in land under the Statute of Frauds. The ancient doctrine of the common law, as stated in *Sheppard's Touchstone*, is that "every deed well made must be written, *i. e.*, the agreement must be all written before the sealing and delivering of it, for if a man seal and deliver an empty piece of paper parchment, albeit he do therewithal give commandant that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no deed." This remains the law in Maryland, in England

and is generally supported by the authorities in this country. *Byers* v. *McClanahan*, 6 G. & J. 250.

The earliest or leading case in England is that of *Texira* v. *Evans*, not reported but referred to in *Master* v. *Miller*. *Hibblewhite* v. *McMorine*, 6 M. and M. 200, and *Davidson* v. *Cooper*, 11 M. & W. 778, 793, distinctly overrule *Texira* v. *Evans*, cited and stated by WILSON, J., in *Master* v. *Miller*, 1 Anstr. 225, is as follows: Evans wanted to borrow £400 or so much of it as his credit should be able to raise; for this purpose he executed a bond; with blanks for the name and sum and sent an agent to raise money on the bond; Texira lent £200 on it, and the agent accordingly filled up the blanks with that sum and Texira's name, and delivered the bond to him. On *non est factum*, LORD MANSFIELD held it a good deed. *Tiedeman on Real Property*, 789, 2 ed.; 1 *Jones on Mortgages*, 5 ed., 68, note 1; *Chauncey* v. *Anthony*, 24 N. Y. 330.

Deeds are frequently delivered into the hands of others to be filled in. The question whether such insertions may be made by an agent not holding authority under seal has given rise to much discussion. The earlier view and the one held to by many Courts, is they cannot, and this doctrine is declared in Arkansas, California, Georgia, Maryland, Mississippi, North Carolina, Ohio, South Carolina, Tennessee and Virginia. 1 vol. *Am. and Eng. Enc. of Laws*, 2 ed., p. 954, note 1, and also in Kansas, Illinois, Indiana, Kentucky, Maine, Massachusetts, Michigan and Oregon. 1 *Jones on Mortgages*, p. 68 and note. *Tiedeman on Real Property*, sec. 789 and notes, 2 ed.

Although the doctrine of *Texira* v. *Evans*, is spoken of by MR. JUSTICE SMITH in *Chauncey* v. *Arnold*, 24 N. Y. 330, as the settled doctrine in that State, yet Mr. JUSTICE DENIO, who also delivered an opinion in the same case, spoke with apparent approval of the English cases overruling the "looser doctrine" of that case: In the case before the Court in 24 N. Y. 330, above, the question whether the mortgagee's name could be filled in by one acting for the mortgagor under parol author-

ity was left undecided, for in that case the name of·the lender was not filled in at all, and it was held that the mortgage was ineffectual as security in the hands of one who had advanced money upon it in that condition.   In *Wallace* v. *Harmstad*, 15 Pa. St. 462, CHIEF JUSTICE GIBSON said that *Texira* v. *Evans* could only be sustained on the ground that the obligor had estopped himself by an act in *pais*; which is in effect to wholly disregard the doctrine of that case.

There is a dictum by MR. JUSTICE NELSON, of the Supreme Court of the United States, followed by WAGNER, J., in Missouri, that a person competent to convey real estate may sign a deed in blank and authorize an agent to fill it up. *Drury* v. *Foster*, 2 Wall, 24; 1 *Jones on Mortgages*, 6, 8 and 69, note 1.

The following doctrine laid down in *Allen* v. *Winthrow*, 110 U. S. 128, by MR. JUSTICE FIELD: "It may be, and probably is, *the law in Iowa*, as *it is in several States*, that the grantor in a deed conveying real property, signed and acknowledged, with a blank for the name of the grantee, may authorize another party, by parol, to fill up the blank," qualifies, limits and confines the mere dictum in *Drury* v. *Foster*, 2 Wall. p. 33, to be applicable in only those limited, few western States where the law is the same as in Iowa, and so adjudicated by their respective highest State Courts.

The case of *Allen* v. *Withrow*, 110 U. S. 128, arose in Iowa, where a conveyance of real estate is not required to be under seal.   In those States in which a deed does not require to be sealed, as in Iowa, the grantor may by parol authorize the grantee or some third person to fill up the blanks, without needing a second delivery to give validity to the deed. 5 vol. *Am. and Eng. Enc. of Law*, 1 ed., p. 424, note 2.

Such authority to another to fill up an instrument or any material part of it after its execution is sufficient in case of a simple contract, but not for filling up a sealed instrument. The stream can never rise higher than its source.   Authority to make an instrument, under seal, or to affix a seal to it, must be given by an instrument of equal authority.   1 *Jones on Mortgage*, 391.   *Boasford* v. *Pearson*, 9 Allen, 387, also

supports the appellant's contention, and is very similar to the case here.

The paper here was a mere nullity when it left the Carrs hands, nor did they ever redeliver or acknowledge it anew. There is a class of cases in favor of the validity of the assignment of personal property where the paper is signed and delivered in blank, either upon an express or implied parol authority from the party signing it, to fill up the blank to the person to whom it is delivered, and it is afterwards filled up by the holder. But the case now before the Court is altogether distinct from them in the following particulars: All the cases in which blank assignments subsequently filled up have been sustained will be found to be assignments of choses in action, where the written evidence of the chose in action (such as a bond) is itself assigned and delivered and when the delivery of the bond by the holder, accompanied by his endorsement, is held to give, by implication, the right to transferee to fill it up to himself or to any third party. *Chesley* v. *Taylor*, 3 Gill, 251; *Whitridge* v. *Barry*, 42 Md. 142.

The result of the cases may be summed up thus : After delivery blanks cannot be filled up except by one having authority *under seal*, or by the grantee followed by a redelivery. This rule has been so strictly applied in some States that even before the delivery such filling of blanks could not be done by one who was acting by authority not under seal if not in the grantor's presence; and a deed so executed was held invalid between the original parties at least if aware of the mode of execution. But in favor of innocent third parties such a deed would bind the grantee by estoppel. *Washburn on Real Property*, vol. 3, p. 219, 6 ed.

Upon the point under consideration we might ask if the description of the property may be inserted, why may not the sum also? and if these may be supplied why not the more formal parts of the mortgage? If we once depart from the rule, how is the line to be drawn consistently with the preservation of any rule at all? If we say the description or sum may be inserted by the agent, will it not lead us inevitably to the

doctrine that the entire deed may be executed by the agent also? We shall be carried on, step by step, if we mean to be consistent, until we have destroyed all the well-settled distinctions between sealed and unsealed instruments. *Preston* v. *Hall*, 23 Gratt, 600; 14 Am. Report, 152.

The mere fact that the mortgagor has enjoyed the benefit of the money obtained upon the mortgage, or a portion of the money, is not by itself a sufficient ground upon which to found an estoppel. A mortgagee invoking the aid of estoppel must show that he has been vigilant and careful in the protection of his own rights and interests. No protection will be given him against his own negligence and folly. To avail himself of the acts and admission of the mortgagor, he must have been *ignorant of the irregularity in the execution* of the mortgage, and must have taken it with good reason to suppose it was properly executed. When this mortgage, so executed, was offered to him he should have said: "I know that mortgage is void, I will therefore not receive it. You must furnish me a better mortgage." 1 *Jones on Mortgage*, p. 71, secs. 92 and 93, 5 ed.; also *Ayres* v. *Probasco*, 14 Kan. 175.

All the facts disclosed by this record are not sufficient to estop Carr from showing that the mortgage is void. If the mortgage under which the sale was made was in its inception and finality, essentially and absolutely null and void because it was not redelivered and acknowledged anew after Mr. Parker had filled in the description of the property, there can be no estoppel against Carr, because a nullity never can be waived.

There is a marked and important distinction between nullities and irregularities—an irregularity may be waived—a nullity never can be waived. 87 Md. 218. That nothing can emanate from nonenity or, as more tersely enunciated, *ex nihilo nil*, is an axiom in the physical sciences which might be appropriately transferred to a judicial investigation of this nature. 61 Md. 131.

An estoppel requires strictly two elements to establish it, which are lacking in this case. (1.) Mr. McColgan was not

ignorant of the defect in the mortgage at the time he accepted it. (2.) Nothing that Carr did induced McColgan to make the sale under the void mortgage. *Hoxie* v. *Home Ins. Co.*, 32 Conn. 40; *Findeisen* v. *Met. Fire Ins. Co.*, 57 Ver. 520; 10 *Am. and Eng. Corporation Cases*, note 5, p. 41.

*William S. Bryan, Jr.*, and *W. W. Parker* (with whom was *J. R. Staum* on the brief), for the appellee.

Every deed is ineffectual to pass real estate until it is delivered. Delivery is essential to the validity of every deed. As a general principle it can be successfully asserted that until a deed is delivered to the grantee therein named and accepted by him it is still incomplete as a good and valid deed. And equally is it true that until the delivery to the grantee and acceptance by him; the grantor can change it or alter it or fill in blank spaces existing in it, and if this be followed by an effectual delivery to the grantee and acceptance by him, the deed is a good and valid instrument.

Can then a grantor confide a deed containing blank spaces to an agent of his with authority to the agent to fill in the blank spaces and deliver the deed so filled in to the grantee? Can an agent of the grantors so fill in such blank spaces in the deed? If the deed be so confided to such an agent with authority to fill in the blank spaces, and if he fill them in strictly in accordance with the authority given him, and present such a completed deed to the grantee, and the grantee accept it, is the deed a good and valid instrument?

These are questions we are called upon to answer in this case.

If a grantor can write in the deed anything to further his intentions before the deed is delivered, why cannot he authorize someone to do this for him? Is there any virtue in the grantor's penmanship? Suppose the grantor cannot write, cannot he delegate the power to fill in something in the deed to complete it before the deed is delivered?

Before the deed is delivered to the grantee, and accepted by him, whatever is written therein by the grantor or by anyone

for him, under his authority and in accordance therewith, is a part of the deed and must be so treated, for the deed does not become a good and valid deed until delivery.

This doctrine is almost universally recognized, though it must be admitted, some cases hold otherwise, yet upon a careful analysis of them, it will be found, as was stated in the case of *Chauncey* v. *Arnold*, 24 N. Y. 330, that the Court has "made the mistake of failing to distinguish between the original execution of the deed and the filling up of some blanks in the same." This case states the law to be, after a review of numerous authorities, in accordance with the doctrine generally announced above.

That blanks can be filled up by a grantor's agent *before delivery*, in strict accordance with the authority of the grantor, has been widely announced since the early case of *Texira* v. *Evans*, cited and stated by WILSON, J., in *Master* v. *Miller*, 1 Anstruther's Rep. 225, and also cited by SMITH, J., in *Chauncey* v. *Arnold, Ibid.*, in which case last cited, the learned Judge states the rule of *Texira* v. *Evans*, to "be regarded as settled law in this State."

The distinction between filling in blanks *before* and *after* delivery should always be borne in mind, and it will be found that parol authority by a grantor to an agent to fill in blanks in a deed *before delivery* is recognized everywhere as the accepted rule of law.

In the case at bar the blanks were filled in *before delivery* by Walter W. Parker, who was authorized by the mortgagors to so fill in the blanks, and was made their agent for that purpose. He accordingly filled in the blanks strictly in accordance with the authority vested in him, and delivered the mortgage as a *completed* instrument, and as such it was a good and valid mortgage. *Phelps* v. *Sullivan*, 140 Mass. 36; *Holbrook* v. *Chamberlain*, 116 Mass. 155; 1 *Jones on Mortgages*, 5 ed., p. 68, note 1; *Miller* v. *Crouse*, 159 Ill. 1 (42 N. E. R. 377.)

"Although it was at one time doubted whether parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion at this day is that the

power is sufficient." *Drury* v. *Foster*, 2 Wall. 24; *Allen* v. *Withrow*, 110 U. S. 128.

After a careful review of the authorities, both *pro* and *con*, this same doctrine is announced in *Washburn on Real Property*, 6 ed., vol. 3, secs. 2092 and 2093, as the accepted rule in America.

True, the earlier cases seem to have held that an authority to execute an instrument under seal must be in writing and under seal, yet at the present time a broad distinction is drawn between such a condition and the condition where a sealed instrument is confided to an agent of the grantors, with parol authority to fill in blank spaces *before delivery*, and this latter has always been held good. *Adsetts* v. *Hives*, 33 Beavan's Rep. 52; *Hudson* v. *Revett*, 5 Bing. 368; *Reed* v. *Morton*, 1 L. R. A. 736; *McCleerey* v. *Wakefield*, 2 L. R. A. 529, and cases cited in note; *Dobbin* v. *Cordiner*, 4 L. R. A. 333; *Bell* v. *Kennedy*, 100 Pa. St. 215; *Lamb* v. *Lamb*, 46 N. Y. Supp., at p. 226; *Vanderbilt* v. *Vanderbilt*, 54 How. Pract. 250; *Hale* v. *Russ*, 1 Green. Rep. 334; *Smith* v. *Crooker*, 5 Mass. 537; *Adams* v. *Frye*, 3 Met. 103; *South Berwick* v. *Huntress*, 53 Me. 89; *Bk. of Pittsburg* v. *Neal*, 22 How. 96; *Androscoggin Bk.* v. *Kimball*, 10 Cush. 373; *Spitler* v. *James*, 9 Am. L. Reg. (N. S.) 605; *State* v. *Young*, 23 Minn. 551; *Keane* v. *Smallbone*, 17 C. B. 179; *Vliet* v. *Camp*, 13 Wis. 205; *Wiley* v. *Moor*, 17 Serg. & B. 438; *Richmond Mfg. Co.* v. *Davis*, 7 Blackf. 412; *Woolley* v. *Constant*, 4 Johns, 54; *Knaff* v. *Maltby*, 13 Wend. 587; *Ex parte Decker*, 6 Crow. 59; *Commercial Bk.* v. *Kortright*, 22 Wend. 364; *Boardman* v. *Gore*, 1 Stew. (Ala.) 517; *Drury* v. *Foster*, 2 Wall. 24, 33; *Pence* v. *Arbuckle*, 22 Minn. 417; *Garland* v. *Wells*, 15 Neb. 298; *Smith* v. *Crooker*, 5 Mass. 539; *Hunt* v. *Adams*, 6 Mass. 519; *Brown* v. *Pinkham*, 18 Pick. 172; *Hale* v. *Russ*, 1 Me. 334; *Allen* v. *Withrow*, 110 U. S. 119, 128, 129; *Speake* v. *U. S.*, 9 Cranch, 28; *Cribben* v. *Deal*, 21 Oregon, 215; *Lafferty* v. *Lafferty*, 42 W. Va. 789; *Owen* v. *Perry*, 25 Iowa, 424; *Schwartz* v. *Ballou*, 47 Iowa, 194; *Chicago* v. *Gage*, 95 Illinois, 613; *McClain* v. *McClain*, 52 Iowa, 272; *Field* v. *Stagg*, 52 Missouri, 534;

*Ragsdale* v. *Robinson.* 48 Tex. 380; *Van Etta* v. *Evenson*, 28 Wis. 33; *Pence* v. *Arbuckle*, 22 Minn. 417; *Schintz* v. *McManamy*, 33 Wis. 299; *Chapman* v. *Beach*, 32 Kan. 167; *Threadgill* v. *Butler*, 60 Tex. 600; *Lee County* v. *Welsing*, 70 Iowa, 199, 202; *Palacios* v. *Brasher*, 18 Col. 593; *McQuie* v. *Peay*, 58 Missouri, 56–59; *McNutt* v. *Dix*, 10 L. R. A. 660.

This doctrine is also the rule in England at the present time. *Elphinstine's Interpretation of Deeds*, pp. 25–30; *In re Howgates & Osborn's Contracts*, L. J. (Ch. Div.), vol. 71, p. 281, etc. (1902).

Even after the execution of the mortgage of the eighth day of February, 1902, by George R. Carr and wife to Charles C. McColgan, if there had been such an irregularity in its execution as would avoid it under the law, the mortgagors have since upon numerous occasions acknowledged it, ratified it and concurred in it, both by their words and actions and conduct, and they have expressly ratified it and assented to its terms by solemn deed under their hand and seal in the shape of a confirmatory mortgage duly and regularly executed by them.

We have in this case the peculiar state of facts of a man who has obtained all he desired, induced another man to lend money upon property secured by a mortgage, received the benefit of the money, applied it to his use and thereby saved himself from serious loss, and protected his property against the claims and demands and threats of his creditors, and after all this attempting in equity to escape from the effect of his own mortgage. Attempting to do a thing, and then after he has exhausted all its benefits in his own favor, attempting to deny that he has done it. If such a case ever existed surely this is the one where the maxim of equity that "he who comes into equity seeking its benefits, must be prepared to do equity," applies in all its full force and effect.

No Court in equity and good conscience will give serious consideration to the claims of these mortgagors. They, by their own acts, are estopped to deny the effect of their intentions. Estopped *in pais* is a well recognized and clearly de-

fined doctrine and is evident in this case.   *Am. & Eng. Ency; of Law*, 2 ed., vol. 2, p. 420, etc.

And they are likewise estopped by their own solemn deed, under their hand and seal, the effect of which is everywhere recognized as estopping them from denying their original mortgage. See cases hereinbefore cited, and *Am. & Eng. Ency. of Law*, 2 ed., vol. 2, p. 392, etc., title : Estoppel by Deed. See also note to *McCleery* v. *Wakefield*, 2 L. R. A.; p. 529, where the subject is exhaustively reviewed and discussed. *Lloyd* v. *Burgess*, 4 Gill, 187–192; *Funk* v. *Newcomer*, 10 Md. 301; *LeStrange* v. *State*, 58 Md. 26 and 41.

And a deed although questionable is made good if the grantor receives the purchase-money for the property, because this amounts to an assent to the delivery of the deed, per ROGERS, J., in *Van Amringe* v. *Morton*, 4 Whart. 387. .

The Glen Morris-Glyndon Supply Company occupy the position of creditors whose claims arose after the execution of the mortgage in question. Being creditors of the mortgagors they can have no greater rights than the mortgagors themselves. This is well illustrated by the case of *Meade* v. *Clarke*, 23 L. R. A. 479.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Carroll County in equity overruling exceptions to a sale of a mortgaged farm under the power of sale contained in the mortgage, and ratifying the sale. The exceptions were filed by the mortgagors upon the ground that there never had been a valid execution of the mortgage.

The mortgagors, the mortgagee, the notary before whom the mortgage was acknowledged, the attorney who prepared the mortgage and other persons were examined as witnesses under the exceptions. With the exception hereinafter mentioned, there was no real conflict between the testimony of the several witnesses. Without noticing the evidence in detail it is sufficient to say that we find therefrom the following state of facts material to the present controversy.

The appellant, George R. Carr, applied to the appellee through a real estate broker for a loan of $8,000 to be secured by a mortgage on a farm in Carroll County owned by him. After some negotiations it was agreed between the parties that the appellee should lend $7,000 on the farm if the title proved to be good and that Walter W. Parker of the Baltimore Bar should investigate the title and draw the mortgage. Theer was at that time a ground rent of $300 per annum on part of the farm and the taxes were in arrear and there were some judgments of record against Carr. It was agreed that all of these incumbrances were to be paid off out of the $7,000 to be lent by the appellee so that its repayment might be secured by a mortgage on the unincumbered estate in fee in the farm.

The investigation of the title proved to be troublesome and occupied so long a time that Carr's judgment creditors became pressing in their demands for payment, and finally, through their counsel, notified Mr. Parker on February 7th, 1902, that they would issue execution on the judgments unless they were paid on the following day. Mr. Parker having completed the investigation of the title proceeded at once to prepare the necessary conveyances to consummate the mortgage loan, and sent word to Carr to come to his office to execute them. Mr. Carr responded promptly and, taking his wife with him, went on the afternoon of the same day to Mr. Parker's office to execute the papers.

As it was necessary to send the deed for the extinguishment of the ground rent on the farm to the owner of the rent for execution, the preparation of that conveyance received attention first. The description of the farm was somewhat intricate and its preparation consumed so much time that the mortgage had been only partly finished by seven o'clock in the evening. In order to permit the mortgagors to return home the mortgage notes were signed by them and left with Mr. Parker and they also executed the mortgage in its incomplete condition with the understanding that Mr. Parker was to take it to his house and complete it that evening.

The testimony is conflicting as to the reason for executing

the mortgage in an incomplete condition and also as to the extent to which it had been completed at the time of its execution. Mr. Parker testifies with clearness and positively that, Mrs. Carr having several times during the preparation of the mortgage expressed a desire to get away, he informed her and her husband that they might remain in his office until the mortgage was ready or if they desired it he would send for a notary, and in the meantime prepare the mortgage notes and finish the mortgage as nearly as possible and when the notary arrived they could sign and acknowledge the mortgage and sign the notes and go home and he would then take the mortgage to his house and finish it. Carr and wife readily consented to the suggested arrangement giving as their reason that they were anxious to get home. The notary was then sent for and the mortgage executed and acknowledged by Carr and his wife and left with Parker to be completed. The mortgage notes were also signed by Carr and wife and left with Parker.

Mr. Parker further testified positively that at the time of the execution of the mortgage, it had been entirely completed except that the latter portion (about one-half) of the description of the land had not been inserted and the paper had not been endorsed. The portion of the description of the land which Mr. Parker said had been inserted in the mortgage before its execution described in general terms the location of the land and the names of the several tracts of which it was composed and a number but not all of the courses and distances of its boundary lines. The reason assigned by Mr. Parker for the unusual length of time required to complete the mortgage was that an entirely new description of the land had to be made from a variety of deeds, plats and surveys, as the mortgagor had purchased it in different parcels and had at various times exchanged portions of it for contiguous lands in order to straighten his boundaries.

Mr. Carr and his wife testified that they had signed the mortgage notes and had also signed and acknowledged the mortgage at the time and place mentioned by Mr. Parker and left

them with him.    Mr. Carr said that the mortgage was a "form in blank" and his wife said that she put her name to the papers at her husband's request but knew nothing further about them; but as both of these witnesses stated that they did not read or examine the mortgage when they signed it, although it appears that they were not prevented from so doing, their testimony as to the state of its completion when executed is of little value.  Carr, although he testified somewhat evasively, did not attempt to deny that the loan was made to him on the terms set forth in the mortgage or that the land therein described was that which he had agreed to give as security for the repayment of the loan.

On the following morning, January 8th, 1902, Mr. Parker took the completed mortgage to the mortgagee, McColgan, and told him of the circumstances of its execution.  McColgan accepted the mortgage and furnished the $7,000 agreed upon and the mortgage was recorded.    The money was applied so far as necessary, through Mr. Parker, to the redemption of the ground rent and the satisfaction of the liens on the mortgaged land, and the balance accounted for to the mortgagor, Carr, who admitted when upon the stand that he had received the benefit of the entire $7,000.

The testimony of Mr. Parker as to the the details of the mortgage transaction was corroborated by the other witnesses, except in so far as it was contradicted by that of the mortgagors, and we are satisfied that it presents a correct account of the occurrences to which it relates.

A few days after the recording of the mortgage a confirmatory mortgage was executed in due form between the same parties in order to more clearly describe a right of way and correctly state the acreage of the farm.    This new instrument recites distinctly the making of the $7,000 loan and the execution of the original mortgage on the farm to secure its repayment and formally and in express terms confirms the conveyance of the farm thereby made to the mortgagee. Through some inadvertence the confirmatory mortgage was mislaid and was never recorded, but it was found and put in

evidence in this case during the taking of the testimony on the exceptions.

When the first interest note secured by the mortgage came due it was paid. When the second one matured Mr. Carr asked the appellee for additional time for its payment which was granted to him. He was also, when in defauult, accorded an opportunity to offer the farm for sale himself at auction so as to avoid the costs of a sale under the mortgage. He offered it at auction but failed to make a sale. After repeated but unavailing requests for payment from Mr. Carr the farm was put up for sale at auction under the power of sale contained in the mortgage and sold to the mortgagee for $7,000. At that sale Mr. Carr was present and suggested that the farm be offered both in parcels and as a whole which was accordingly done. He also explained to those present at the sale the location and advantages of the farm and the several parcels of land of which it was composed. During all this time he never questioned the validity of the mortgage or made any objection to the method of its execution. Those questions were for the first time raised in the exceptions which he filed in the Circuit Court to the ratification of the sale.

It thus appears that the appellant, having gotten from the appellee the mortgage loan agreed upon, and enjoyed its benefit, and having without objection paid one installment of interest thereon, and having applied for and received an extension of time for other installments, and having attended at the sale of the mortgaged property and made suggestions as to the method of conducting it, now excepts to the sale upon the technical ground that he and his wife signed and acknowledged the mortgage before it had been entirely completed, even though they confirmed it a few days afterwards by a conveyance signed, sealed and acknowledged in due form of law. Some cogent reason must be presented to induce a Court of equity to sustain such an exception.

The doctrine relied on in support of the exception is that blanks in a deed or mortgage cannot be validly filled by one whose authority to do so rests in parol. Ever since the case

of *Hibblewhite* v. *McMorine*, 6 M. & W. 200, which overruled *Texira* v. *Evans*, it has been held in England that authority under seal is required to fill such blanks and this rule has been followed in some of the American Courts, but there are many modern decisions to the contrary in this country especially where the parol authority to fill up the blanks was given before the delivery of the deed and they were so filled. In *Washburn on Real Property*, 6 ed., vol. 3, sec. 2093, it is said "the better opinion seems to be that such parol authority is sufficient to authorize the filling in of blanks before an actual delivery, the possession of the agent being that of the grantor, but it is otherwise after delivery." In *Cyc.*, vol. 2, p. 167–8, it is said, upon the authority of many cases there cited. "The rule that the signing, sealing and delivery of a blank which is to be filled as a deed can give no authority to make the paper a deed was never intended to prescribe to the grantor the order of time in which the several parts of a deed should be written. The whole act of execution is finally consummated by delivery, and if the grantor should think proper to reverse the usual order in the manner of executing the instrument, but in the end perfect it by delivery it is a good deed.

"The last general statement refers particularly to delivery by the maker. It is not necessary in all cases however that the grantor should in person make delivery of the deed, and upon this principle a deed executed with blanks and afterwards filled and delivered by the agent of the grantor or obligor is good according to the weight of the modern authorities." It is there further stated that under what would seem to be the modern rule, parol authority to fill a deed is regarded as sufficient.

In *Allen* v. *Withrow*, 110 U. S. 129, the Court say. "As said by this Court in *Drury* v. *Foster*, 69 U. S. 781, 'Although it was at one time doubtful whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument the better opinion at this day is that the power is sufficient.' But there are two conditions essential to make a deed thus executed in blank operate as a conveyance of the prop-

erty described in it; the blank must be filled by the party au-
thorized to fill it, and this must be done before or at the time
of delivery of the deed to the grantee named."

In *Berwick* v. *Huntress*, 53 Me. 90, it is said: "It seems to
be now settled that where a party executes a deed or bond or
other instrument and delivers the same to another person in
an imperfect state and gives authority to that person to fill up
the blanks and he does so its validity cannot be controverted.
This authority may be by parol."

If therefore we were compelled to decide this case solely
upon the validity of the mortgage from Carr and wife to the
appellee as depending upon the circumstances of its execution
and delivery we would have excellent authority for holding
that the order of executing and completing it were adopted for
the convenience of the mortgagor and that as it was entirely
conpleted by Mr. Parker under the authority of the mort-
gagors before its delivery to the mortgagee it was a valid and
effectual mortgage.

We are however confined to no such narrow grounds for
upholding the mortgage as against the mortgagors, for the
record contains ample evidence of conduct on their part
amounting both to a ratification of the mortgage and an es-
toppel to deny its validity. The formal execution and deliv-
ery by them, with knowledge of the circumstances of the com-
pletion of the original mortgage and within a few days there-
after, of the confirmatory mortgage which on its face recites
the making of the $7,000 loan on the farm and the giving of
the original mortgage as security therefor amount to a ratifi-
cation of Mr. Parker's acts in completing and delivering that
instrument and also to a confirmation as between the parties
to this appeal of the instrument itself. The line of conduct
subsequently pursued by the mortgagor in accepting the ben-
efit of the mortgage loan and paying an installment of interest
on it, and asking and receiving indulgence on another install-
ment, and attending the mortgage sale and suggesting the
method which was adopted of offering the several parcels of
which the farm was composed and describing to bidders the

several parcels of the land with their improvements and advantages all without ever suggesting any defect in the mortgage or the method of its execution, should in equity and good conscience estop him from coming in at this day after the sale has been made and reported and objecting to its ratification and thus impeaching the title of those claiming under the mortgage. *Funk* v. *Newcomer*, 10 Md. 317; *Browne* v. *Methodist Church*, 37 Md. 124.

The order appealed from will be affirmed.

*Order affirmed with costs.*

(Decided March 21st, 1905.)