GILLIS ET VIR *v.* SOPOURN ET UX.

[No. 147, October Term, 1949.]

*Decided April 14, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*S. Marvin Peach* for the appellants.

*Robert J. Torvestad* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal by the defendants in an equity suit brought to set aside a tax deed and to remove that deed as a cloud on the title of the plaintiffs. The Chancellor found in favor of the plaintiffs, impressed the property conveyed by the tax deed with a trust in their favor, directed the defendants to convey to the plaintiffs upon receipt from them of the amount paid for the tax deed and additional taxes paid, and appointed a trustee to make such conveyance in the event of the failure of the defendants to comply. The costs, including the cost of the reporter and the stenographer, were placed upon the defendants, who have appealed here.

The property involved in this case is Lot 16 A, Block 2, of Elmore Power's Subdivision of College Park. It is unimproved, and was part of a subdivision laid out by the brother of Mrs. Gillis, one of the appellants. She formerly owned it. But on November 18, 1940, she sold and conveyed it to her daughter, June Lamore. On September 16, 1942, Miss Lamore conveyed the lot to John W. Klein, who was named as a defendant in the bill of complaint, but who did not appear and allowed the case to go by default so far as he was concerned. Klein neglected to record his deed. In March, 1943, the lot was sold at public tax sale for non-payment of 1942 taxes. It was bought in by the County Commissioners of Prince George's County, and final ratification was ordered by the Circuit Court on February 28, 1945. In January, 1946, Mrs. Gillis, while looking over the records in the Court House at Upper Marlboro, discovered the tax sale, the lot being assessed at the time of such sale in the name of her daughter. She inquired from the Deputy Treasurer of the County what she could do about securing the lot or redeeming it, and was told she would have to buy it in. She then requested a statement of the amount necessary to buy the lot, and was, thereafter, furnished with the figure of $130.80. Mrs. Gillis testified that some time in 1944 Mr. Klein came to see her and asked whether Miss Lamore had paid the taxes, and said he had never gotten a tax bill. She then asked him if he had recorded his deed. He said he had not, and she then advised him to see a lawyer and get the matter straightened out. But she heard nothing more about it until she found out about the tax sale in 1946. Some time in February or March of the latter year, the appellee, Robert Jordan Sopourn, called at her house, inquiring the whereabouts of her daughter. It appeared that he had entered into an agreement with Mr. Klein to buy the property and had paid a deposit and was informed by his attorney about the tax sale. He was advised by the attorney to get a new deed from Miss Lamore, since the deed from her to Klein had never been recorded, and it was with this

idea in view that he came to see Mrs. Gillis, whom he had never known before, and who was an entire stranger to him. His testimony was that Mrs. Gillis told him her daughter was married and living up around Philadelphia, but she had just moved, and if he would come back in a week or so, she would find out her address and she would get in touch with her daughter and let him know. He went to see her again about three weeks later, and she said her daughter was coming down. He said the first time he talked to her she said she would be glad to help him, and said the same thing the second time. Eventually, however, he decided to complete the Klein purchase without a deed from Miss Lamore and on May 10, 1946, when the settlement was had, he found that Mrs. Gillis had purchased the lot from the County Commissioners on May 7, 1946. He immediately went to see Mrs. Gillis and she refused to talk further, but referred him to her attorney. Mrs. Gillis said that Sopourn called on her first, some time in early 1946, and asked where her daughter was, that he told her he wanted her daughter to give him the deed for the lot, that she never promised him to help get a deed from her daughter, that she was friendly with him, but she made him no promise. The Sopourns eventually recorded the deed from Miss Lamore to Klein, and got a deed on May 10, 1946, from the Kleins which they did not, however, record and they then filed the bill of complaint. Up until the purchase by Mrs. Gillis from the County Commissioners the appellee could have done the same thing she did, that is, make an offer to the County Commissioners for the property. It is agreed that the time for redemption had passed, and that the tax sale was a valid one. Therefore, had Mrs. Gillis not bought the property, the deeds from Lamore to Klein and from the Kleins to the appellees would not have given the appellees good title. They would still have to get the title from the County. Although the appellees knew this, they made no effort to get this title, and were in no way prevented from getting it until Mrs. Gillis paid the purchase price to the County Commission-

ers, which was more than two months after the Sopourns made their agreement with Klein. The contention made on behalf of the appellees, which was upheld by the Chancellor, is that the actions of Mrs. Gillis prevented them from getting the property, and, therefore she is estopped from claiming under her deed adversely to them. The Chancellor held that "* * * because of her assuring or reassuring conduct when inquiry was made and her silent and secret arrangements by which she acquired the property, that she did acquire it with notice and was not a bona fide purchaser for value as against Mr. Sopourn, and that in those circumstances she should not be permitted to enjoy the fruit of her efforts, and in fact, although not actually guilty of fraud she was guilty of constructive fraud or what is known as fraud in law."

We are dealing with the matter of title to land, and in such cases it is unanimously recognized that the doctrine of estoppel should be carefully and sparingly applied, and only on the disclosure of clear grounds of justice and equity. One of the outstanding elements lying at the basis of the doctrine, as set out in *Pomeroy's Equity Jurisprudence*, 5th Ed., Vol. 3, paragraph 805, pages 191, 192, is that the party claiming the estoppel "must in fact act upon it in such a manner as to change his position for the worse." The case of *Rodgers v. John*, 131 Md. 455, 462, 102 A. 549, 551, quotes Pomeroy in the following words: "The cases all agree that there can be no estoppel, unless the party who alleges it relied upon the representation, was induced to act by it, and, thus relying and induced, did take some action." The Court then added, "This definition of equitable estoppel and of one of its essential elements is in accord with the law of this state as announced in many cases." We said in the late case of *Price v. Adalman*, 183 Md. 320, 325, 37 A. 2d 877, 879, "When a party voluntarily so conducts himself that another party in good faith relies upon his conduct, and is thereby put in a worse position, then the first party is estopped from asserting rights which might otherwise exist to keep the second party

from his remedy." As authority for that statement we quoted not only *Rodgers v. John, supra,* but five later cases, all upholding this principle. In each of these cases we found that the party claiming the estoppel had been led, by the conduct of the other party, to change his position for the worse.

We have in this case two parties who, in the beginning, owed each other no duty. They were not even known to each other, when Mrs. Gillis made her first inquiry about the possibility of getting the property at tax sale, and when Mr. Sopourn made his agreement with Mr. Klein. At the time they first met, it was known to both of them that the property had been sold for taxes, and that it would be necessary to get a title from the County Commissioners. Whether, at that time, Mrs. Gillis had actually done anything about getting such a title for herself, or whether she merely had an idea of it in her mind, does not appear. Sopourn apparently had no idea whatever of attempting to get the tax title until he had gotten a deed from Miss Lamore. No question of taxes or tax title appears to have been discussed by Mrs. Gillis and Mr. Sopourn until May 10, 1946. All the discussion was whether Mr. Sopourn could get in touch with Miss Lamore and get a deed from her. He did not attempt to complete his deal with Mr. Klein until after he had concluded he could not locate Miss Lamore through Mrs. Gillis. He had paid Klein $150, and he got a deed on May 10, 1946 from the Kleins, but the additional $450, which he put up to make up the purchase price, was returned to him by his attorney, so that he has not spent any more money on the transaction than he had before he first talked to Mrs. Gillis. His position, therefore, had not changed for the worse in any way as a result of his conversations with Mrs. Gillis. He was, from February 24th, when he agreed with Klein, until May 7, when Mrs. Gillis bought from the County, in a position to try to buy the property from the County Commissioners. Nothing Mrs. Gillis did, until she bought it herself, prevented him from doing so. She was not obliged to tell him, an entire stranger, what she was going to do. He made the

mistake of not getting a deed for the tax title before he attempted to get a deed from Miss Lamore. The representation or promise by Mrs. Gillis that she would help him get a deed from Miss Lamore did not stop him from doing anything, and his position is no worse now than it was when he first talked to her, except that the outstanding title to the property still has to be acquired by him. "There is no fraud, in a legal sense, in a man's buying in a superior or conflicting title to a neighbor's land. There is no breach of either legal or equitable duty, trust, or confidence." *Gross v. King*, 150 Md. 291, 133 A. 331, 332.

Mrs. Gillis was not obliged to disclose to a perfect stranger her own desire to attain the property, and thereby, perhaps, destroy her chance of getting it, so long as nothing she said to him upon which he relied put him in a worse position. If she had told him she was thinking of buying the property from the County Commissioners, he would probably have attempted to buy it before she could, and perhaps would have succeeded, but she was not bound to give him that impetus towards action.

It is doubtful, whether as a matter of public policy, a contract not to buy property at tax sale, even if made for a valuable consideration, could be upheld. We do not have to pass upon that question here, because we have no such contract. If we found that Sopourn relied on what Mrs. Gillis had said and thereby the County was precluded from getting an offer for the property, the same question of public policy might arise in the enforcement of an estoppel. But since we do not so find the facts, that question is not before us. We may also add that it is no part of the duty of the courts to criticize the method of dealing with each other of parties to litigation, unless such dealing results in the creation of legal rights or responsibilities.

Since we find no equitable estoppel exists, the decree will be reversed.

*Decree reversed and bill dismissed with costs.*