## FITCH *v.* DOUBLE "U" SALES CORPORATION

[No. 103, October Term, 1956.]

326

*Decided February 14, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Samuel J. Friedman,* for appellant.

*Edward Azrael,* with whom was *Gerald H. Cooper* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree holding that real estate was held under a resulting trust, but that a judgment was a valid lien against the property.

On December 2, 1955, Naomi Fitch, appellant, filed a bill of complaint against Double "U" Sales Corporation, appellee, in which she alleged substantially that formerly she owned a home, 6911 Proctman Avenue, in Baltimore. Her husband died and she had an opportunity to purchase certain property at 533 N. Curley Street in Baltimore City. Being a widow and without any available source of income she was unable to procure a mortgage on said property at a favorable rate of interest to pay the balance of the purchase price. She therefore requested Louis Cooperman, a friend of the family, to take title to the property and execute a mortgage thereon. He, being a young man, single and in a position to obtain a mortgage with an interest rate of four percent per annum, agreed to said arrangement and to convey the property to her at her request after settlement was consummated. Pursuant to such an arrangement a contract for the purchase of the Curley Street property was entered into on May 26, 1952, between the owners as sellers and Louis Cooperman as buyer. On August 4, 1952, Mrs. Fitch sold the Proctman Avenue property and on the next day, August 5, 1952, settlement for the Curley Street property took place and by deed of that date title was conveyed to Cooperman in fee simple. He, on the same date, executed a purchase money mortgage, as agreed to by him, to the Eutaw Savings Bank.

All of the money was paid on account of the purchase price of the Curley Street property by the appellant out of her own funds realized from the sale of the Proctman Avenue property. Also, all funds on account of said mortgage were paid by the appellant from her own funds. At no time did Cooperman contribute any money or other consideration toward the payment of any part of the purchase price, or on account of the mortgage indebtedness, nor did he receive any beneficial interest therein. Appellant has continually occupied the premises and has collected all income accruing therefrom. After the settlement and passage of said deed to Cooperman she requested him to convey the property to her, pursuant to their aforesaid understanding, with which he complied. Thereafter the appellant learned that the appellee, Double "U" Sales Corporation, had obtained a judgment against Cooperman in the Superior Court of Baltimore City in the amount of $3,265.08 and attorney's fees and court costs, prior to the deed from Cooperman to her. Although she, through her attorney, had requested the appellee to waive and release its aforesaid alleged lien against the Curley Street property by virtue of its judgment, after fully advising the appellee's attorney of all the aforementioned facts in regard to the true ownership of the property, the appellee refused to waive or release its aforesaid lien. She was fearful that there would cause to be levied an execution against the property and that the same would be sold to satisfy the judgment held by the appellee against Cooperman. She prayed that the court by decree enjoin the appellee "from levying, attempting to levy or otherwise attempting to enforce the alleged lien of its aforesaid judgment against Louis Cooperman, against the said property, 533 North Curley Street", and that the property be held by her forever, free and clear of the alleged lien of said judgment, and for other and further relief.

After answer filed, testimony was taken in open court before the chancellor. He decreed in part that, while Cooperman held title of record to the Curley Street property in fee simple, he held the legal title only as trustee for the appellant as *cestui que trust*, she being the sole owner of the equitable

interest in said property. Appellant knew or should have known that Cooperman was purchasing merchandise on credit and that his creditors had a right to rely on his legal ownership of the Curley Street property. Appellant was therefore estopped from impressing a trust upon said property which would apply to the appellee for credit extended by it to Cooperman during the time he held title to the property. The judgment of the appellee against Cooperman was declared to be effective against the Curley Street property, which property was then titled in the name of Naomi Fitch, the said judgment being a lien taken only to the extent of $2,092.60. The appellant should pay the cost of the proceedings.

The appellant appeals here from that part of the decree which found that she was estopped from asserting her rights as owner of the equitable interest against said judgment lien and she contends that the appellee should be permanently enjoined from issuing an execution or attachment on said judgment -against the Curley Street property.

The appellee, on the other hand, contends that the holding that appellant was the owner of the beneficial or equitable interest in the property under a resulting trust was erroneous. The appellee did not cross appeal. In *Sprecher v. Sprecher,* 206 Md. 108, 110 A. 2d 509, the lower court by decree set aside a deed, but also impressed an equitable lien on the property for sums expended by the appellant in improvements to the property and required the appellee to pay the costs. It was there held that, as the appellee had not appealed from the part of the decree impressing the lien and requiring the appellee to pay the costs, the question was not before this Court. See also *Lynch v. Kamanitz,* 148 Md. 381, 129 A. 362; *Syfer v. Fidelity Trust Co.,* 184 Md. 391, 397, 41 A. 2d 293; *Nowell v. Larrimore,* 205 Md. 613, 623, 109 A. 2d 747. It was said by Judge Offutt in *Harrison v. Robinette,* 167 Md. 73, 83, 173 A. 60: "* * * a decree may not be reversed for the benefit of one who did not appeal therefrom, even though as to him it was both erroneous and injurious. *Frederick County v. Page,* 163 Md. 631, 164 A. 182; *Gordon v. Miller,* 14 Md. 204; *Lanahan v. Latrobe,* 7 Md. 268; 4

*C. J.* 697." However, for the purposes of this case, we will assume, without deciding, that the question is properly before us.

It is well settled as a general rule that where the purchase price is paid by one person and the title is taken in the name of another, there arises in favor of the person paying the purchase money a resulting trust, and the holder of the legal title becomes a trustee for him. *Dixon v. Dixon,* 123 Md. 44, 55, 90 A. 846; *First National Bank of Catonsville v. Carter,* 132 Md. 218, 103 A. 463; *Mountford v. Mountford,* 181 Md. 212, 218, 29 A. 2d 258; *Tiemann v. Welsh,* 191 Md. 1, 6, 59 A. 2d 628. Of course, where a person attempts to establish a resulting trust, the burden is on him to prove such trust, and it must be made out by plain and unequivocal evidence, and the payment of the purchase money by the party claiming the trust before or at the time of the purchase is indispensable. The Courts should review parol evidence to establish such a trust with the greatest caution for it impeaches a solemn instrument executed according to law and recorded as an evidence of title. Any other rule would make insecure the title to real estate. *Vogel v. Vogel,* 157 Md. 147, 153, 145 A. 370; *Cropper v. Lambertson,* 174 Md. 24, 197 A. 576; *Kelley v. Kelley,* 178 Md. 389, 399, 13 A. 2d 529; *Fasman v. Pottashnick,* 188 Md. 105, 110, 51 A. 2d 664. As pointed out in *Bogert, Trusts and Trustees,* Volume 2A, 1935 Edition, Section 464, the reasons for caution of the courts in approving this type of trust are manifest because there is a formal deed without any mention of a trust and reciting the payment of consideration. The deed is recorded and is a public record. The establishment of the resulting trust depends upon oral evidence sometimes supplemented by proof of conduct of the parties to overcome the record title. Also, an additional reason why the courts should be strict in this matter is the ease with which fraud can be worked on creditors by the use of this type of trust.

Mrs. Fitch testified that the reason she sold the Proctman Avenue property was because her husband had died, consequently she was compelled to live alone and was afraid she would get sick. She wanted to get a house further in

town. She did not want to buy the Curley Street house in the name of either of her sons because one had just gotten married and the other was getting a divorce. She had known Cooperman for many years. She received $250.00 as a deposit on the Proctman Avenue property which was applied as a deposit on the Curley Street property. A receipt for that amount was offered in evidence. She received a check for $5,404.58 representing the balance due for the Proctman Avenue property which she endorsed over to Cooperman. This check was deposited by him in his bank, and was paid on the Curley Street house. Cooperman had no interest in the property, she made all payments on the mortgage due the Eutaw Savings Bank. She paid the taxes, and for all repairs and improvements on the Curley Street property, and Cooperman contributed nothing thereto. The mortgage placed on the Curley Street property on August 5, 1952, was $3,350.00. She occupied the house from the time of its purchase and Cooperman never lived there. She was never obligated or indebted to Cooperman and paid him no money for occupying the property. She had known him since he was a small boy and he called her "Ma". She knows nothing about Cooperman's private business. Cooperman for a time boarded at the home of her daughter and her husband. The daughter and her husband "broke up". Cooperman was in the pinball business. She took calls for him and she would give him calls after she moved to the Curley Street property, and he received mail, "advertisements and things like that", at the Curley Street address. The calls that came to Cooperman which she took were from "lunchrooms and places like that". She got word from Cooperman that he was going to change the house over to her name because he thought he was having trouble. When asked why she allowed the property to remain for two years in Cooperman's name, she replied that she was sick and that her daughter became sick and she "just left it ride".

Mr. John E. Fish, a real estate agent whom Mrs. Fitch employed to handle the purchase of the Curley Street property, testified that he applied the deposit she received from the sale of the Proctman Avenue property as a deposit on

the purchase price of the Curley Street property. The reason the contract was taken in the name of Cooperman was because Mrs. Fitch could not borrow the money for less than about six percent, and they had heard through advertisements about four percent money being available. The only place he knew where they could get the four percent money was at the Eutaw Savings Bank and he was fairly certain that Mrs. Fitch would have difficulty getting it. Cooperman's name was suggested and he thought that Cooperman could get it at four percent. He believed he even arranged for Cooperman to make application for the mortgage loan with the Eutaw Savings Bank.

Mr. William C. Walker, an employee of the Union Trust Company testifying for the appellant, stated that on August 4, 1952, $5,404.58 was credited to Cooperman's account and between August 5, 1952, and August 7, 1952, $5,094.33 was withdrawn from that account. Prior to the deposit of $5,404.58, Cooperman's bank account balance was $76.44.

Mr. Louis Cooperman testified that he had known the appellant since he was thirteen years of age. He did not contribute any part of the purchase price of the Curley Street property nor did he make any payments on account of the mortgage out of his own funds. He had no interest in the property. Mrs. Fitch requested him to take title because, he being in business and his credit being good at that time, he might be able to obtain a mortgage on the property with interest at the rate of four percent, which he agreed to do. It was further understood that he would transfer the property back to her when "things got settled and her son's divorce became final". The funds for the payment of the purchase price of the Curley Street property came from the proceeds of the sale of the Proctman Avenue property. Mrs. Fitch turned over to him the check in the amount of $5,404.58 which she received in payment for the balance of the purchase price of the Proctman Avenue property, which he deposited in his checking account in the Union Trust Company. He thereafter drew checks on that account for the payment of the purchase price and settlement expenses of the Curley Street property. The balance remaining was

returned to Mrs. Fitch after he paid a few personal accounts due by her. He never lived in the Curley Street house, made no payments on the Eutaw Savings Bank mortgage, paid for no repairs or improvements. Mrs. Fitch was not obligated to him in any way, nor did she pay him any rent for the property, he having no interest therein. He did not represent to the appellee, nor to anyone else, that he owned the Curley Street property, nor was he ever authorized by Mrs. Fitch to use that property as an asset to obtain credit. The only real estate which he ever owned was a piece of property left to him and his cousin by his mother on Granada Avenue, which was sold in 1950, he receiving $4,500.00 as his share. He gave the Curley Street property as his mailing address and used Mrs. Fitch's telephone number. He occasionally called her to find out if anyone wanted to get in touch with him. He started this practice about the end of 1953. He did not know that a judgment had been entered against him nor was any notice ever served on him to that effect. He received a letter from an attorney representing the appellee threatening to enter judgment against him. As a result on July 27, 1954, he arranged to have the property transferred back to Mrs. Fitch as he did not want her to lose her home. The consideration for the note upon which the judgment was entered against him was a past due debt due by him to the appellee. He did not convey the house before the judgment was entered because Mrs. Fitch's daughter, Mary, was in the hospital and "everybody was upset about her" and he did not give the house a thought. Mrs. Fitch had no interest in his business nor did he loan her, her husband, or her daughter any money, nor were there any financial transactions between him and any member of the Fitch family. From 1951 through 1954 he was in the vending machine business, and during that period purchased merchandise from the appellee. He was friendly with Mrs. Fitch's daughter, Mary, who became ill. In discussing payment of the amount due the appellee with its president, Mr. Rosenberg, he stated that Mary's illness was costing him money. He did not mean that he was paying her bills, but he went to the hospital at least three times

a week, neglected his work, started drinking and everything went to pieces. He received telephone calls at the Curley Street address from all of his customers and the telephone number there is the same one by which the attorney reached him with reference to the delinquent payments on the mortgage. He told Mary's husband that if he divorced her, he would marry her.

Mr. J. Edward White, treasurer of the Eutaw Savings Bank, testified that he called and talked to Cooperman at Mrs. Fitch's telephone number, Orleans 5-3424, about eight times concerning the default in the payments due under the mortgage, and also spoke to Mrs. Fitch.

Miss Sidney Swartz, appellee's bookkeeper and office manager, testified that in January, 1954, Cooperman explained his delinquency of the payment of the account by saying he was paying the medical expenses of a woman who was living in the same house. He signed a note for his indebtedness at that time and gave his address as 533 North Curley Street. After that she sent bills and receipts to him at that address. The consideration for the judgment note was his past due debt to the appellee.

Mr. Walter Stockbridge, produced as a witness by the appellee, and assistant treasurer of the Eutaw Savings Bank, testified that a mortgage loan was made on the Curley Street property to Louis Cooperman, who made application on a regular form. No prior application for a loan had been made on that property. After the loan was made he had occasion to contact Cooperman several times by talking to him personally on telephone number Orleans 5-3424. The calls were in reference to payments on the mortgage, which was assumed by Mrs. Fitch on May 23, 1955, but that assumption did not release Cooperman from his obligation. The bank has the policy of rejecting applications for loans to persons having no income.

Mr. Harry Rosenberg, president of appellee corporation, testified that in January, 1954, Cooperman was called into his office with regard to his delinquent account. He stated that he could not make payment because of his heavy obligations in paying medical expenses for a woman who was very

close to him and who was mentally ill. He later offered his note in payment thereof, stating "you have nothing to worry about, I do own some property", but at that time Cooperman did not "say what property". He "assumed it was the same property that he had talked about in the past that his mother had left him upon her death". The note was accepted with the understanding that legal action would not be taken against Cooperman "for· sometime [in order] to straighten out his affairs". He first learned that the record title to 533 Curley Street was in the name of Louis Cooperman through his counsel shortly after judgment was obtained against Cooperman.

Judgment was entered on July 20, 1954. No financial statements were ever given by Cooperman to the appellee. From the record it appears that neither the appellee, nor anyone in its employ, knew that the record title to the Curley Street property was in Cooperman until execution was issued on its judgment.

Mr. Samuel Weisman, appellee's sales manager, stated that he dealt with Cooperman for about four years. In 1953 and 1954 Cooperman's account was delinquent. Cooperman reiterated that he would pay the account but that he was having some difficulty at that time, and it was taking a lot of money as he had had some personal troubles. He said he had been having an affair with a young married woman, whose husband became aware of this, and threw them both out of the house. This woman afterwards required mental treatment and Cooperman paid those bills. That was the only reason he gave for not having the money. When asked whether Cooperman made any representation to him or in his presence to Mr. Rosenberg that he owned any property, Mr. Weisman answered: "I was always under the impression from what he said that he did own property and that he also had some property left to him by his mother, an estate." When asked what he meant by property, he answered: "Real estate, yes. That is one of the reasons why I allowed the account to get as high as it did." He had the impression that the real estate owned by Cooperman was that inherited from his mother. He qualified this by saying: "* * *

but I understand that there were other properties." He did not know what other properties. He was led to believe there were other properties owned by Cooperman at the time the notes were made up or just prior to that time. This was when they were pushing Cooperman for the money. Cooperman never told him that he owned any property before he gave him credit. When questioned by the court if he ever asked Cooperman before giving him credit whether he owned any property, he replied: "Not outright, no, sir." He never asked Cooperman for a financial statement. He had always found him "honorable prior to that".

Both Mrs. Fitch and Mr. Cooperman testified as to the creation of the trust. Although the burden was upon Mrs. Fitch to prove the trust, the proceeds of the sale of the Proctman Avenue property was shown by independent evidence to have been deposited in Cooperman's account, which was very small, and all expenditures from that account were traced for the benefit of Mrs. Fitch for the purchase of the Curley Street property or otherwise. That account was exhausted by the purchase of the Curley Street property, the balance being paid by the mortgage. Furthermore, the purchase of the Curley Street property was consummated one day after the sale of the Proctman Avenue property, which had been used by Mrs. Fitch as a home. The Curley Street property was also used by her as a home after its purchase. The testimony that all payments on the mortgage were made with Mrs. Fitch's money and her testimony that she kept up the property, paid the taxes, and paid for repairs, is uncontradicted. Mr. Cooperman testified that he contributed nothing to any of those items. There is no evidence that Mrs. Fitch owed money to Cooperman or anyone else when title was taken to the property, or that she had any interest in Cooperman's business. The whole idea of putting the property in Cooperman's name might have been ill advised and unwise. Apparently she was not advised by counsel. However, the testimony of a disinterested witness and exhibits corroborated the testimony of Mrs. Fitch and Cooperman. The payments by Cooperman for Mary arose apparently from reasons other than business. We are of opinion that

the appellant has met the burden of proof and the chancellor was fully justified in decreeing the resulting trust. Property held under an express trust and also in resulting and constructive trusts is not liable for the trustee's individual debts and cannot be reached by attachment or execution. *First National Bank of Catonsville v. Carter, supra,* 221; *Bank & Trust Co. v. College,* 167 Md. 646, 655, 656, 176 A. 276, and cases there cited. There was ample evidence to justify a finding of the resulting trust. *Dove v. White,* 211 Md. 228, 126 A. 2d 835.

The final question is whether the appellant is estopped from asserting said trust against the appellee. The appellee relies on the following quotation from *Bogert, Trust and Trustees, supra,* Section 466: "The creditors of the resulting trustee who attach, levy upon, issue an execution against, or sell under execution the res as the property of the trustee obtain no interest thereby, even though they believed that their debtor was the absolute owner of the property, unless they are able to make out a case of estoppel against the resulting cestui. In a group of cases where the resulting cestui has allowed the property to stand in the name of the trustee for a long period, with knowledge that the trustee was incurring debts and that these creditors might rely on their debtor's appearance of ownership, the resulting cestui has been held to be estopped to set up his equitable interest against the creditors of the trustee."

The appellee also relies on the following quotation from *Restatement of the Law, Trusts,* Volume 2, Section 313: "If a third person extends credit to the trustee in reliance upon his apparent ownership of the trust property, and the beneficiary knew or had reason to know that the trustee was receiving credit because of his apparent ownership, the third person can obtain satisfaction of his claim out of the trust property." This rule is based upon the doctrine of estoppel. Appellee also relies on the following quotation from *Bank & Trust Co. v. College, supra,* 655: " 'Trust property is not liable for the trustee's individual debts, and cannot be reached by attachment, or execution, and this is true not only in express trusts, but also in resulting and

constructive trusts. The rule applies although the trust is oral, and unless a statute provides otherwise, or unless the trustee obtains credit by reason of the trust, with the acquiescence of the beneficiary, even though the creditors have no knowledge of the existence of the trust, the estate being in the name of the trustee.' " It was said in *Kolker v. Gorn,* 193 Md. 391, 398, 67 A. 2d 258: "However, it is well established that a judgment creditor is not in the position of a bona fide purchaser, and his claim is subject to prior, undisclosed equities. 'He is neither in fact nor in law a bona fide purchaser, and must stand or fall by the real, and not the apparent rights of the defendant in the judgment.' *Ahern v. White,* 39 Md. 409, 420; *Lee v. Keech,* 151 Md. 34, 37, 133 A. 835, 46 A. L. R. 1488; *Caltrider v. Caples,* 160 Md. 392, 397, 153 A. 445, 87 A. L. R. 1500; 1 *Glenn, Fraudulent Conveyances* (Rev. ed.) § 19. It would seem to follow that the wife is not estopped to show the mistake in the deed, unless by misrepresentation, or otherwise, she induced the creditor to give credit on the assumption that the record showed the true state of the title. *Tiffany, Real Property,* (3rd ed.) § 1235; *Note, Annotated Cases,* 1914 C, p. 1066."

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which may have otherwise existed, either of property, of contract or of · remedy, against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy. Whatever may be the real intention of the parties making the representation, it is absolutely essential that this representation, whether consisting of words, acts or silence, should be believed and relied upon as the inducement or action by the party who claims the benefit of the estoppel and that, so relying upon it and induced by it, he should have taken some action. The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation and was induced to act by

it and thus relying and induced took some action on that representation. This principle has been frequently stated by this Court. Whether the doctrine should or should not be applied depends upon the facts and circumstances of each case. Unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission upon which another has relied, and has been misled to his injury, the doctrine will not be applied. *Alexander v. Walter,* 8 Gill 239, 254; *McClellan v. Kennedy,* 8 Md. 230; *Funk v. Newcomer,* 10 Md. 301; *Hardy v. Chesapeake Bank,* 51 Md. 562, 590; *Carmine v. Bowen,* 104 Md. 198, 64 A. 932; *Rodgers v. John,* 131 Md. 455, 462, 102 A. 549; *Brenner v. Plitt,* 182 Md. 348, 364, 34 A. 2d 853; *Crane Co. v. Onley,* 194 Md. 43, 50, 69 A. 2d 903; *Gillis v. Sopourn,* 195 Md. 189, 194, 72 A. 2d 715. Equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when that party has so conducted himself that it would be contrary to equity and good conscience to allow him to do so.

The chancellor found that the evidence of the reliance by the appellee on the fact that Cooperman owned the Curley Street property was "not strong". Nor did he regard the fact that a statement made by Cooperman at the time the judgment note was given as of particular significance, because the note really represented Cooperman's past indebtedness and, moreover, it was a demand note and provided for attorney's fees and so forth. He concluded that the appellee lost nothing in his opinion by taking that note even though it did rely on false statements. He found, however, that during the period from August 5, 1952, when the Curley Street property was conveyed to Cooperman, up to the time the note was taken, the appellee was given the impression deliberately by Cooperman that he owned some real estate. The appellee was never told specifically that Cooperman owned the Curley Street property but contends that he held out to it that he owned some real estate which he did not own at that time. The only real estate he had owned had been sold by him. Therefore, the only basis for Cooperman's

statement was as to legal ownership in the Curley Street property. He further found that these general statements made by Cooperman and the general impression which he gave of the ownership of some real estate, had something to do with the extending of credit to him by the appellee for purchases made during the period he had legal title to the property. He called attention to the fact that no check was made of Cooperman's financial record and no financial records were examined. There is some basis for the chancellor's finding that credit was extended to Cooperman on the basis that he owned real estate. However, Cooperman's statement to Mr. Rosenberg and Mr. Weisman was after credit had been extended to him. There appears, however, nothing in the testimony and exhibits before us, beyond mere speculation, to show that the appellee in any way relied upon the fact that Cooperman owned the Curley Street property. None of the officers or employees of appellee corporation knew that Cooperman had any interest in the Curley Street property until after the judgment was entered. To bind the equitable interest of Mrs. Fitch, the chancellor found that she corroborated the impression that Cooperman owned the Curley Street property because she allowed him to use it as an informal place of business, where telephone calls came in, and sometimes she, herself, took telephone calls and transmitted them. He found that, although Mrs. Fitch had no intent to defraud, by these actions she did participate in the active holding out that Cooperman owned that property, in addition to the passive holding out which the state of the record evidenced and that, therefore, she was estopped to claim that the judgment was not a lien against the property. With this last finding we cannot agree. Under the law on which the appellee relies, as above stated, and which has been so plainly stated in many cases, the appellant, being the owner of the equitable interest, was not estopped unless she represented or acquiesced in the representation that Cooperman was in fact the owner of the property. There is no evidence that Mrs. Fitch knew that Cooperman was being extended credit by anyone, other than the Eutaw Savings Bank, nor is there any evidence that she knew he owed any

money.   She had no interest in his business.   There is no evidence of direct representation.   The only possible evidence of tacit acquiescence in the representation is the statement of appellee's bookkeeper that she sent bills to him at the Curley Street address, there being nothing to show that Mrs. Fitch saw these bills, and the fact that she allowed Cooperman to use her home as an informal place of business where telephone calls were taken and transmitted.   The privilege to Cooperman to use the Curley Street property as a place of business could just as well have been on a rental basis from the owner.   The fact that Mrs. Fitch took telephone calls and transmitted them for him could just as well have been because Cooperman employed Mrs. Fitch to do so.   To hold, because a person has an office in a house and telephone calls come for him there, that he is the owner of that property is mere speculation.   Under the doctrine of estoppel, as heretofore set out, we find no conduct either active or passive on the part of Mrs. Fitch which would bar her from asserting her true equitable ownership in the property.   That part of the decree which finds that the judgment of the appellee is a lien against the Curley Street property must therefore be reversed and the injunction issued as prayed.

*Decree affirmed in part, and reversed in part, and cause remanded for the passage of a decree in conformity with this opinion.   Costs to be paid by the appellee.*