David M. NICHOLS and Olive J. Nichols, Aurora Federal Savings & Loan Association, a corporation duly incorporated under the laws of the United States of America, Pennick Corporation, a Maryland corporation,

v.

CITIES SERVICE OIL COMPANY, a Pennsylvania corporation.

Civ. A. No. 9746.

United States District Court
D. Maryland,
Civil Division.

Dec. 23, 1957.

George E. Brown, Jr., Baltimore, Md., for plaintiffs.

Frank, Bernstein, Gutberlet & Conaway, Eli Frank, Jr., and C. Stanley Blair, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiffs seek specific performance of a lease agreement and other relief. The term of the lease was twenty years, to commence upon the performance by plaintiff landlords of a condition precedent, namely, the completion within ten months from the date of the agreement of a gasoline service station which plaintiff landlords agreed to build on the site. The building was not completed within ten months; defendant elected not to exercise an option which it had to complete the building, and treated the lease as void, in accordance with its terms. The principal questions raised by plaintiffs are whether time was of the essence, whether defendant waived performance of the condition precedent, and whether defendant is estopped to rely upon failure of performance.

Both sides have moved for summary judgment. The facts necessary to decide the essential questions are not disputed, although there is a dispute as to the inferences to be drawn from those facts. However, since plaintiffs seek equitable relief, those inferences are for the judge. Both sides desire a prompt decision, and agree that little or nothing would be gained by producing witnesses in open court.

In 1956 David M. Nichols, an experienced real estate operator, and his wife, Olive J. Nichols, owned and were developing the Kent Island Shopping Center, located on the north side of Route 40 in Stevensville, Queen Anne County, Maryland, a short distance east of the Chesapeake Bay bridge.

On June 22, 1956, the Nichols entered into a lease agreement with defendant, Cities Service Oil Company, covering a parcel of land in the shopping center. The agreement contained the following provision as a rider to paragraph 2:

"This lease shall be for the term of Twenty (20) years commencing at such time as the Tenant shall in writing evidence the completion to its approval (which approval shall not be unreasonably withheld) of the improvements described in the plans, specifications, and plot plan which have been examined, approved and initialled by the parties hereto; which improvements are agreed to be made by the Landlord at his own cost and expense. In the event Landlord shall fail within ten (10) months from the date of this lease, to complete to the Tenant's satisfaction the improvements herein required to be made by the Landlord, then, unless the Tenant shall elect, by written notice to the Landlord within two (2) months after the elapse of such time, to effect and complete said improvements, this lease shall be deemed cancelled and of no effect. If the Tenant shall so elect to complete said improvements, it shall be entitled to recover from the Landlord the amount expended therefor, which said amount shall be due and payable upon proof by the Tenant of the payment of all claims and charges connected with the improvements effected by the Tenant; or else Tenant may elect to credit said amount against rent thereafter to become due. Until paid, said amount shall constitute a lien on said premises in favor of the Tenant. However, the aforementioned lien shall be subsequent to the lien of any mortgage or deed of trust, covering the demised premises, which is serviced by an assignment of this lease or the rent payable hereunder. In the event, by reason of the Landlord's failure to complete the described improvements in the time and manner provided herein, the Tenant shall elect to effect or complete the improvements herein specified, the term of this lease shall commence upon Tenant's completion of said improvements or six (6)

months from the date that the Tenant notifies the Landlord of its intention to complete said improvements, whichever shall first occur."

If the landlords did not complete the service station, they were not subject to any claim for damages. The agreement provided simply that the lease should be cancelled. The agreement contained numerous covenants on the part of the landlords; certain provisions with respect to a mortgage and the amortization thereof, and a paragraph (23) which provided:

"Tenant further covenants and agrees that it will not terminate this lease because of any default on the part of the Landlord without first giving written notice of such default to the mortgagee and allowing mortgagee a period of thirty (30) days after receipt of such notice of Landlord's default to remedy the same."

The agreement was prepared by Cities Service on its printed form, with many typewritten riders and additional paragraphs.

In September, 1956, Nichols obtained a commitment for a permanent mortgage from the Philadelphia Savings Fund Society after Cities Service had agreed to a modification of the lease. In December, 1956, he obtained a commitment for a construction loan from Aurora Federal Savings & Loan Association, one of the plaintiffs. On February 20, 1957, the settlement date of the construction mortgage, the Nichols conveyed the premises to Pennick Corporation, another plaintiff, which is evidently controlled by Nichols. Cities Service was advised of these transactions.

On February 25, 1957, Nichols' building contractor and agent met with Cities Service's regional engineer. The entire project was reviewed, certain changes in the plans and specifications were made, and the engineer was told that construction would not begin for another ten days or two weeks. Everyone knew or should have known at that time that the station could not be finished by April 28, 1957. However, plaintiffs did not ask for any extension of time and Cities Service made no complaint.

Construction was commenced on March 11, 1957. A Cities Service engineer visited the site on March 11, March 26, April 11, April 25 and May 9. On May 9 the engineer told the contractor's foreman that as soon as the gas tanks were set and covered up the contractor should notify Cities Service, since Cities Service wanted to put gasoline in the tanks, and that the tanks shoud not be filled with water in the meanwhile. Two unidentified Cities Service employees accompanied the engineer and expressed their satisfaction with the work done on the station and said that the job was coming along nicely. During the first part of May Cities Service delivered a sign to the job site and its engineer gave the contractor's foreman certain instructions with regard to the erection of the sign. It does not appear, however, whether the sign was actually erected.

On April 28 the building was between 50 and 75 percent completed. On May 9, 1957, a vice-president of Cities Service wrote the Nichols, referring to the lease and stating: "You are hereby notified that because of your failure to complete within ten months from the date of said lease to the Tenant's satisfaction the improvements in said lease required to be made by you, Cities Service Oil Company hereby elects that said lease shall be deemed cancelled and of no effect, as of the date hereof".

Counsel for the Nichols and for Pennick Corporation replied "that my clients reject your effort to cancel the aforesaid lease and that they insist upon the performance of all your committments and obligations under it".

Cities Service did not communicate in any way with Aurora Federal, the mortgagee under the construction loan.

█ The first question is whether time was of the essence of the contract. In Triton Realty Co. v. Frieman, 210 Md. 252, 259, 123 A.2d 290, 294, the Court quoted with approval 49 Am.Jur., Specific Performance, § 42, p. 56, as follows: "Time may be made of the es-

sence of the contract by express stipulation, or even without an express stipulation to that effect where such intention is clearly manifested from the agreement as a whole, construed in the light of the surrounding facts. In either case the court may refuse to decree specific performance where it appears that the plaintiff failed to perform on his part within the stipulated time, unless there is something in the facts to take the case out of the usual rule."

The lease agreement contains no express stipulation that time is of the essence. However, the agreement was so drawn that the lease would not become effective unless (a) the landlords completed the building within ten months (i. e., on or before April 28, 1957), or (b) Cities Service elected by written notice to the landlords within two months after April 28 to complete the improvement itself. The rider to paragraph 2, quoted above, provides: "In the event Landlord shall fail within ten (10) months from the date of this lease, to complete to the Tenant's satisfaction the improvements herein required to be made by the Landlord, then, unless the Tenant shall elect, by written notice to the Landlord within two (2) months after the elapse of such time, to effect and complete said improvements, this lease shall be deemed cancelled and of no effect." This provision, read in the light of the whole agreement and of the surrounding facts, clearly shows that time was of the essence. Landlords were not subject to any damages if they failed to complete or even if they failed to start the building. The lease simply became of no effect, unless Cities Service elected to build the station itself.

Since it is undisputed that plaintiffs failed to perform within the stipulated time, the court should refuse to decree specific performance unless "there is something in the facts to take the case out of the usual rule". Triton Realty Co. v. Frieman, supra. Plaintiffs rely on both waiver and estoppel.

Waiver is the voluntary and intentional relinquishment of a known right. Waiver and estoppel are closely akin; the terms are sometimes loosely used interchangeably, but they are not synonymous. It is not hard to distinguish between an express waiver and estoppel, but the courts have often found it difficult to distinguish between implied waiver and estoppel. 56 Am.Jur., Waiver, §§ 2, 3, pp. 102–105.

The general rule is that a waiver must be supported by an agreement founded on a valuable consideration, or the conduct on which a waiver is predicated must be such as to preclude a party from insisting on performance of the contract or a forfeiture of the condition. However, in the latter case, it is not a requisite, as in the case of a technical estoppel, that prejudice result to the party in whose favor the waiver operates. 56 Am.Jur., Waiver, § 16, p. 116; Schindel v. Danzer, 161 Md. 384, 396, 397, 157 A. 283. The general rule has been recognized in Maryland, but has not always been applied, especially in insurance cases. Schindel v. Danzer, supra; Enterprise Mfg. Co. v. Oppenheim, Oberndorf & Co., 114 Md. 368, 402, 79 A. 1007, 38 L.R.A.,N.S., 548; McFarland v. Farm Bureau Mutual Auto Ins. Co., 201 Md. 241, 93 A.2d 551; Manufacturers Casualty Ins. Co. v. Roach, D.C.D.Md., 25 F.Supp. 852, and cases cited therein.

Voluntary choice is of the very essence of waiver. It is a voluntary act which implies a choice by the party to dispense with something of value or to forego some advantage which he might, at his option, have demanded and insisted on. 56 Am.Jur., Waiver, § 12, p. 113, and cases cited above.

In the instant case, it is clear that there was no voluntary and intentional relinquishment of any right by Cities Service. The only acts or statements by Cities Service employees before April 28 which plaintiffs rely on to prove waiver and estoppel are expressions of satisfaction with the progress of the job made by a Cities Service engineer who knew that the service station could not be completed by April 28. The only acts on and after April 28, aside from vague expressions of satisfaction by unidentified

employees, are instructions given by a Cities Service engineer to plaintiffs' construction superintendent not to put any water in the tanks and how to erect a sign which had been delivered to the job around the first of May.

In considering whether these acts amount to either waiver or estoppel, it must be recalled that under the specific provisions of the rider to paragraph 2 Cities Service had the right within two months after April 28 to elect to complete the service station itself. Although Cities Service may have known in February that the station could not be completed in April, it does not follow that Cities Service waived its rights by not objecting to the building of the station, because under the rider Cities Service had the right to review the situation as it existed on April 28, and might have elected during the two months period after April 28 to complete the partly-built station itself or to negotiate for a new agreement of some sort with the landlords.

The responsible officials of Cities Service elected not to complete the building, but decided to stand on the provision in the agreement that the lease be "deemed cancelled and of no effect". Instead of letting the two months run by without saying anything to the Nichols, as it might have done, Cities Service formally notified the Nichols of its decision less than two weeks after April 28. There was no voluntary relinquishment of its rights by Cities Service.

Nor is Cities Service estopped to rely upon its rights under the contract. No act by Cities Service misled Nichols into taking any action he and the Pennick Corporation would not otherwise have taken. Nichols knew of the impossibility of completion by April 28 as well as Cities Service. With his eyes open, he chose to proceed with the building and to take a chance either (a) on substantially completing the building on time, or (b) on Cities Service electing to complete, or (c) on working out some new agreement with Cities Service, or (d) on renting the service station to someone else.

In a recent case the Court of Appeals of Maryland said:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which may have otherwise existed, either of property, of contract or of remedy, against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy. Whatever may be the real intention of the parties making the representation, it is absolutely essential that this representation, whether consisting of words, acts or silence, should be believed and relied upon as the inducement or action by the party who claims the benefit of the estoppel and that, so relying upon it and induced by it, he should have taken some action. The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation and was induced to act by it and thus relying and induced took some action on that representation. * * * Equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when that party has so conducted himself that it would be contrary to equity and good conscience to allow him to do so." Fitch v. Double "U" Sales Corp., 212 Md. 324, at pages 338–339, 129 A.2d 93, at page 101.

See also Crane Co. v. Onley, 194 Md. 43, 69 A.2d 903, cases cited in Fitch v. Double "U" Sales Corp., supra, and Born v. Stancills, Inc., Md., 135 A.2d 843.

■ The fact that Cities Service gave no notice to Aurora Federal cannot give the Nichols and Pennick Corporation any rights under paragraph 23 of the lease quoted above. It is doubtful whether that paragraph applies at all to a condition precedent to the lease going into effect. Cities Service did not "terminate the lease" as that term is used in para-

graph 23. Under the rider to paragraph 2 the failure of the landlords to complete the building by April 28 automatically cancelled the lease and rendered it of no effect, unless Cities Service elected to complete the building itself. No notice to Aurora Federal after April 28 could have enabled anyone to remedy that failure. It is not necessary at this time to decide whether Aurora Federal may have any claim against Cities Service if Aurora Federal sustains any loss under its mortgage.

Since there is nothing "in the facts to take the case out of the usual rule", the court should refuse to decree specific performance. Triton Realty Co. v. Frieman, supra, 210 Md. at page 259, 123 A.2d at page 294.

The clerk is instructed to enter judgment in favor of the defendant, but without prejudice to the right of Aurora Federal to file an action against Cities Service if Aurora Federal suffers any loss under its mortgage.