Lathrop DOUGLASS, Plaintiff,

v.

FIRST NATIONAL REALTY CORPORATION, Defendant.

Civ. A. No. 1429–67.

United States District Court, District of Columbia.

Aug. 9, 1972.

Stephen D. Keeffe, John H. Frye, III, Washington, D. C., for plaintiff.

Mark P. Friedlander, Sr., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLU-SIONS OF LAW AND ORDER

GESELL, District Judge.

Plaintiff in this action is before the Court in supplementary proceedings under Rule 69, Federal Rules of Civil Procedure, seeking to satisfy a judgment of this Court rendered on December 19, 1969, and affirmed by the United States Court of Appeals for the District of Columbia Circuit on November 9, 1970. Douglass v. First National Realty Corp., 141 U.S.App.D.C. 233, 437 F.2d 666 (1970). The judgment was entered in the United States District Court for the District of Maryland on February 12, 1971, and in the Circuit Court for Prince Georges County on February 22, 1971, and, together with interest from November 10, 1964, now amounts to in excess of $101,000.00.

Plaintiff has now for some time been attempting to attach assets allegedly belonging to defendant to satisfy this judgment. The instant proceedings concern a parcel of undeveloped real estate known as Parcel M situated in a shopping center known as Beltway Plaza located in Prince Georges County, Mary-

land. Plaintiff, by motion, seeks an order directing sale of this property and payment of the proceeds into this Court. An evidentiary hearing was held and the parties have submitted briefs and proposed findings of fact.

The defendant First National Realty Corporation [hereinafter FNR], is a corporation organized under the laws of the State of Delaware. FNR is wholly owned by real estate developer Sidney J. Brown and his wife Sarah.

The Beltway Plaza site, including Parcel M, was acquired by Brown on December 17, 1959, by virtue of a deed which named, at his direction, his sister Esther Eden as grantee. On June 27, 1961, Esther Eden deeded this property to FNR. This was done by Brown for the purpose of enabling FNR to lease stores to be built on the property and for the purpose of obtaining financing.

FNR was not a straw but became the true beneficial owner and exercised rights accordingly. On September 13, 1967, FNR mortgaged Parcel M to secure a loan of $150,000 from Riggs National Bank. As part of this transaction, FNR executed a deed to part of Parcel M in favor of John M. Conroy and Robert K. Williams, Jr., Trustees for Riggs National Bank. This deed recites in part that FNR ". . . does hereby grant unto the parties of the second part as Trustees in fee simple as Joint Tenants . . ." a part of Parcel M, and that this grant includes ". . . all the estate, right, title, interest and claim, either at law or in equity, or otherwise however, of the [defendant], of, in, to, or out of the said land and premises." This deed further recites that upon payment of the debt secured, the trustees are to ". . . release and reconvey the said described premises unto the [defendant] its successors or assigns . . . ."

On January 19, 1972, plaintiff issued attachments with interrogatories to Riggs National Bank. In its answers Riggs admitted holding this asset and advised that the debt had been paid on May 11, 1972, and that Riggs had instructed the trustees to release the deed. This Court enjoined the "release or reconveyance" of the property by the trustees. This order was extended at consecutive intervals through June 30, 1972, and the Court was assured that after June 30, no "release or reconveyance" would occur except as approved by the Court. On July 31, 1972, this Court ordered the trustees to release the deed to FNR, and FNR to hold it and not pass it on.

Plaintiff contends that since the debt has been paid the trustees now hold fee simple title to part of Parcel M, and that this title may be attached in satisfaction of the judgment. This position is erroneous as a matter of law. The mortgage deed of trust, in spite of its language, was not a transfer of title in fee simple but merely an encumbrance. There is under the law of both the District of Columbia and of Maryland no asset that may be attached now held by the trustees.

The Court said in Maynard v. Sutherland:

In short, notwithstanding the conveyance by deed of trust, "The equity of redemption is considered to be the real and beneficial estate; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law." The deed of trust is a mere security for debt upon the payment of which the deed of trust becomes "extinct." 114 U.S.App.D.C. 169, 175, 313· F.2d 560, 566 (1962) (footnote omitted).

The high Court of Maryland has held that while a mortgage of real property in Maryland conveys and transfers legal title of the property to the mortgagee until payment of the entire debt, the mortgagee's interest is not absolute. Except as to the mortgagee, the mortgagor, while in possession, and before foreclosure, is regarded as the real or substantial owner of the mortgaged

property. Washington Fire Insurance Co. v. Kelly, 32 Md. 421, 440 (1870); Mizen v. Thomas, 156 Md. 313, 318–319, 144 A. 479, 481–482 (1929). In Brown v. Stewart, 56 Md. 421, 430 (1881), the Maryland Court held that the legal estate after payment of the mortgage is regarded as having been vested in the mortgagor or those claiming under him. Also see Paxon's Lessee v. Paul, 3 H. & McH. 399 (1795), an early Maryland case, where the Court held that a release on a mortgage from the mortgagee was not necessary to give a legal title to defendant in ejectment who held by conveyance from the mortgagor after the mortgage, provided the debt had been satisfied. In sum, the land returns to the mortgagor, without any release or reconveyance, by virtue of its condition, free and clear of the satisfied mortgage.

■ A further question is presented, however, by the following facts and circumstances. After the mortgage deed was executed, Brown, president and together with his wife, the sole stockholders of FNR, on October 30, 1968, executed a deed back to Brown's sister, Esther Eden, which purports to convey the Beltway Plaza development (including Parcel M) to her as Brown's nominee. This deed, which was without consideration, recites that it is a grant by First National Realty Corporation, a Maryland corporation, acting pursuant to a resolution of its board of directors and is signed by Brown as president. The deed further recites that it was intended that the deed convey all of the land which had been conveyed to defendant, a Delaware corporation, by deed from Esther Eden on June 27, 1961. The corporate seal of FNR was affixed to this deed and a second recitation of a corporate resolution was included in the attestation. First National Realty Corporation of Maryland is a separate entity from the defendant FNR and never had any interest in the property. Since this deed is defective on its face, it cannot transfer title to the property it seeks to convey, but must be treated as a nullity. 4 Tiffany, Real Property § 967 (3rd ed.

1939); Md.Code Ann. Art. 21, § 5 (1966).

■ This attempted transfer without consideration must also fail because it is a fraudulent conveyance. Creditors are protected at common law against fraud, and "[i]t is a settled principle that a voluntary conveyance is *prima facie* in fraud of existing creditors of the grantor without regard to his actual intention." Westminster Sav. Bank v. Sauble, 183 Md. 628, 631, 39 A.2d 862, 863 (1944). Even if there is valuable consideration, the court can find fraudulent intent from insolvency or heavy indebtedness of the grantor and pending or anticipated litigation. If the creditor's claim is not yet mature the court can also restrain a debtor from disposing of property, appoint a receiver or set a conveyance aside. *Id.* The common law has been codified, and today a conveyance by an insolvent is fraudulent without regard to intent if it is without fair consideration. Md.Code Ann. Art. 39B, § 4 (1971).

■■ Without reaching the question of actual intent, the conveyance attempted here by FNR to Brown's sister, Esther Eden, qualifies as fraudulent on all counts. There is no consideration. FNR, according to Brown's own testimony, had tremendous losses in the year it attempted to transfer Beltway Plaza to Esther Eden. It owed a large debt to plaintiff and faced litigation over this matter, as well as so much other litigation that, again according to Brown, financial institutions would no longer lend to FNR. Moreover, the parties that here claim conveyance have not met the burden they bear to prove the debtor had sufficient property to pay its debts. Berger v. Hi-Gear Tire and Auto Supply, Inc., 257 Md. 470, 263 A.2d 507 (1970); Goodman v. Wineland, 61 Md. 449 (1884).

■ Therefore, not only is the transfer from FNR to Eden a nullity because the deed was inadequate, but it fails because the conveyance was fraudulent. The effort by Brown to shift the

property back to himself through Eden, his straw, for no consideration when financial difficulties arose cannot succeed. The transfer was a fraudulent sham, and equity can act to enforce the judgment by ignoring form for substance.

 Brown answers this determination by claiming that FNR was merely a nominal titleholder, and that he always has been the true and only beneficial owner. He asserts FNR never was in fact intended to be the true owner for the purpose of handling Brown's development of Beltway Plaza. However, the facts are to the contrary. Intended or not, that is exactly what happened. FNR is the true owner, and it is clear that on numerous occasions Brown, as principal owner and officer of the corporation, held out FNR as the true owner of Beltway Plaza.

FNR engaged in extensive litigation with the State Roads Commission of Maryland concerning the condemnation of a portion of Beltway Plaza. This litigation is reported as First National Realty Corp. v. State Roads Comm'n, 247 Md. 709, 234 A.2d 577 (1967), and 255 Md. 605, 258 A.2d 419 (1969).

On September 8, 1966, and March 12, 1969, after the purported deed back to Eden, Brown still represented to the Circuit Court of Prince Georges County, Maryland, that FNR was the owner of the fee simple title and all other interests in Beltway Plaza.

On December 16, 1964, on FNR's letterhead which displays the logo of Beltway Plaza, Brown represented to Suburban Trust Company that FNR was the "title holder . . . and party beneficially entitled to" the proceeds of a loan which had been made on the strength of a mortgage of Beltway Plaza.

On September 13, 1967, Brown, on behalf of FNR and representing that FNR had title to Parcel M, as well as the rest of Beltway Plaza, mortgaged Parcel M to secure a loan of $150,000 from Riggs National Bank. Upon payment of the debt the property was to be reconveyed to FNR.

Moreover, on two occasions Brown represented to plaintiff that Beltway Plaza was owned by FNR. The first occasion was the signing of a contract between plaintiff and FNR on January 15, 1962, which provided for plaintiff to provide services in connection with the development of the site as a regional shopping center. In this contract FNR was referred to as "owner" and represented specifically that it owned Beltway Plaza. The second occasion was the signing of the contract which formed the basis of this suit. That occurred on January 7, 1964. The contract is the American Institute of Architects Standard Form of Agreement Between Owner and Architect in which FNR is referred to as the owner.

Thus FNR, with Brown's complete participation, held itself out as owner of Parcel M both before and after the purported transfer out to Eden, and the contract which led to the judgment was made on FNR's representation of ownership. The business facts and representations made establish that beneficial ownership was placed in FNR, and neither Brown nor FNR can now be heard to the contrary.

The cases are legion where parties in similar circumstances have been universally equitably estopped by such voluntary conduct. Such parties either at law or in equity cannot assert rights "against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy." Fitch v. Double "U" Sales Corp., 212 Md. 324, 338, 129 A.2d 93, 101 (1957). Accord, Johnson Lumber Co. v. Magruder, 218 Md. 440, 447–448, 147 A.2d 208, 212 (1958); 4 Tiffany, Real Property § 1235 (3rd ed. 1939).

 Here plaintiff relied on representations by Brown for FNR which estop Brown and FNR. Bradley v. Cornwell, 203 Md. 28, 98 A.2d 280 (1953) (detrimental reliance on party's delay in asserting rights); Machovec v. Shipley,

171 Md. 339, 189 A. 223 (1937) (party failed to assert survivorship interest in property when father leased it). Where the above-cited factors are present and the parties, Brown and FNR, against whom the doctrine is invoked have also benefited from the result, an even stronger case for estoppel is established. Benson v. Borden, 174 Md. 202, 198 A. 419 (1938) (failure to make timely disclosure of claims against corporation benefited officer of corporation); Funk v. Newcomer, 10 Md. 301 (1856) (representations by beneficiary of trust helped trustees sell land, so beneficiary estopped from later claiming title).

While a judgment creditor may not be in the same position as a *bona fide* purchaser of the property, a grantor who leaves title in a third party who is only supposed to act as trustee for the property is still estopped from claiming title against a creditor of the trustee if "by misrepresentation, . . . she induced the creditor to give credit on the assumption that the record showed the true state of the title," citing Tiffany, *supra*, § 1235. Fitch v. Double "U" Sales Corp., 212 Md. 324, 338, 129 A.2d 93, 101 (1957). That describes the conduct of Brown and FNR perfectly.

 It is equally clear that parties like Brown and FNR are estopped by their admissions in a deed, and later recognized and confirmed by them in their answer in a suit in equity. Ridgely v. Bond, 18 Md. 433 (1862). As a grantor, Brown is estopped from denying the title of his grantee, Funk v. Newcomer, 10 Md. 301 (1856), and a grantee like FNR which enters and holds under a deed cannot at the same time repudiate the title thereby conveyed. Kelso v. Stigar, 75 Md. 376, 24 A. 18 (1892).

 In light of the determination that the transfer out to Eden is a nullity, and that Brown is estopped from conveniently using FNR as a mere conduit to make a gift back to himself and thus escape liability, the Court will grant relief, but not in the form requested. The Court does not have the

power to appoint a receiver. Lion Bonding and Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871, *motion to modify decrees denied,* 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151 (1923). Neither can the Court act with direct jurisdiction to pass upon the validity of the apparent present title to Parcel M. That is a question for the exclusive jurisdiction of the Maryland courts. Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028 (1900).

 However, where there is jurisdiction over the subject matter "[a] court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person." Fall v. Eastin, 215 U.S. 1, 8, 30 S.Ct. 3, 654 L.Ed. 65 (1909). This exception is just as established as the rule. Humble Oil and Refining Co. v. Copeland, 398 F.2d 364 (4th Cir. 1968); *see* United States v. Ross, 302 F.2d 831 (2d Cir. 1962), *motion for contempt denied,* 243 F.Supp. 496 (S.D.N.Y.1965). "The fact that it [is] real property in a foreign jurisdiction [does] not affect the court's power to enter a decree in personam ordering reconveyance." Smith v. Schlein, 79 U.S.App.D.C. 166, 167, 144 F.2d 257, 258 (1944), *final judgment aff'd* 82 U.S.App.D.C. 42, 160 F.2d 22 (1947); Hughes v. Hughes, 112 F.Supp. 899 (D.D.C.1953).

 Here the Court has the requisite subject matter jurisdiction and personal jurisdiction over Brown and FNR. Pursuant to an earlier order of the Court the Riggs trustees are to release the title in fee simple back to FNR. That order of July 31, 1972, shall also continue to enjoin FNR and Brown to hold and not pass on to Eden or anyone else the trustees' release of the mortgage, and to not further convey or encumber the property known as Parcel M.

Brown's claim to ownership has been defeated by his conduct. He has now placed apparent title to Parcel M in other entities controlled by him. Brown is ordered to show cause why he should not be enjoined to transmit a deed from

these entities and Brown and his wife back to FNR so that all title to Parcel M again rests in FNR.

When all of this is done, FNR shall hold the property unencumbered. Plaintiff can then proceed to levy against the property in Maryland through Maryland courts. The proceeds shall be deposited in the Registry of this Court for later distribution against the judgment and appropriate counsel fees.

So ordered.

## ORDER

This matter having come on for a hearing on September 22, 1972, pursuant to an order to show cause entered by the Court on August 11, 1972, it is this 22nd day of September, 1972, hereby

Ordered, that Sidney J. Brown shall cause to be executed and recorded a general warranty deed in favor of First National Realty Corporation (a Delaware Corporation) to Parcel M of the Beltway Plaza development in Prince Georges County, Maryland, from the current holder claiming legal title to the said Parcel M.

Further ordered, that a copy of this Order and the Findings of Fact and Conclusions of Law and Order entered by this Court on August 11, 1972, shall be filed of record with said deeds.

Further ordered, that the aforesaid deeds shall be executed and recorded within 14 days of the date of this Order.

Further ordered, that First National Realty Corporation shall hold title to the aforesaid Parcel M, free and clear of further encumbrances and shall not convey the title or any part thereof to Parcel M.

Further ordered, that in the event of any sale of Parcel M by execution to satisfy plaintiff's judgment in this matter the proceeds of such sale shall be deposited in the registry of this Court for later distribution against the judgment and appropriate counsel fees as this Court may order.